| 100 | 419 |
| 173 | ³509 |

THE ST. LOUIS TRANSFER RAILWAY COMPANY v. THE
ST. LOUIS, IRON MOUNTAIN AND SOUTHERN
RAILWAY COMPANY, *Appellant.*

1. **Railroads :** CROSSINGS AND CONNECTIONS : REPORT OF COMMISSION-ERS : STATUTE. While it is the duty of the commissioners, appointed under Revised Statutes, 1879, section 765, for the purpose of determining the points and manner of the crossing and joining, etc., of two railroads, and the compensation therefor, to view the premises, yet it is not required that such fact be recited in their report.

St. Louis Transfer Ry. Co. v. St. Louis, I. M. & S. Ry. Co.

2. ———: ———: ———. A failure to conform to the statute in that regard might be shown in support of exceptions made to the report.

3. ———: ———: ASSESSMENT OF DAMAGES. The circuit court has the power to hear evidence upon the question of the amount of compensation allowed by the commissioners and may award a new appraisement upon good cause shown, and the ruling of the circuit court in respect thereto may be reviewed by the supreme court.

4. ———: REPORT OF COMMISSIONERS: APPEAL. But such report will not be set aside on appeal because it does not award damages to the defendant corporation, when no evidence on that point has been preserved in the record.

5. ———: ———: ———. A report, allowing plaintiff a latitude of ten feet, in which to make the connections, with an explanation that it is for the purpose of a proper alignment of the frogs and lead bars, is sufficiently definite under the statute.

6. ———: ———: ———. Nor is the report objectionable because it leaves it optional with the plaintiff to place the connection with defendant at the north or south line of the street, there being nothing in the record to show that the defendant is prejudiced by reason of the fact that plaintiff can connect at either street line.

7. ———: ———: ———. A provision in the report permitting plaintiff to occupy a certain incomplete switch of defendant for the space of two hundred and fifty feet, and which in effect condemns that much of defendant's sidetrack and appropriates the same to the use of plaintiff, was unauthorized by the order of the court appointing the commissioners, and an exception to the report on that ground should have been sustained.

*Appeal from St. Louis City Circuit Court.* — HON. SHEPARD BARCLAY, Judge.

·REVERSED AND REMANDED.

*T. J. Portis* and *H. G. Herbel* for appellant.

(1) The findings and order of the court appointing the commissioners are defective and erroneous. Said findings wholly ignore the question of defendant's title to the property over which its so-called "wild track," near Trudeau street is laid—an issue which is specifically made by the pleadings in the case—and erroneously

assume that said track is laid upon the public wharf or streets of the city of St. Louis. *In re Railroad*, 30 Am. & Eng. R. R. Cas. 294. (2) The report filed by the commissioners is indefinite, defective, erroneous and illegal. *Railroad v. Washington*, 1 Rob. (Va.) 67; *State v. Woodruff*, 36 N. J. L. 204; *Craig v. North*, 3 Metc. (Ky.) 187; *DeLong v. Schimmell*, 58 Ind. 65; *Farmer v. Pauley*, 50 Ind. 584; *People v. Diver*, 19 Hun. 264. (3) The appropriation of the "wild track" for about two hundred and fifty feet was illegal and wrong; it was not submitted to the commissioners for decision and was wholly foreign to their functions.

*Hitchcock, Madill & Finkelnburg* for respondent.

(1) This record discloses no irregularity or error in the proceedings below, in respect of which this court, under its uniform decisions in proceedings of this character, will interfere. The record shows the existence of every jurisdictional fact requisite to the validity of the final order or judgment of the circuit court, appealed from, and in such case this court has steadily refused to examine or pass upon the conclusions arrived at by the commissioners appointed under the statute. R. S. 1879, secs. 765, 892–4; *Lee v. Railroad*, 53 Mo. 179; *Bridge Co. v. Ring*, 58 Mo. 495; *Railroad v. Richardson*, 45 Mo. 466; *Railroad v. Almeroth*, 62 Mo. 344; *Railroad v. Dennis*, 67 Mo. 441; *St. Louis v. Lanigan*, 97 Mo. 178–9; *Kansas City v. Railroad*, 84 Mo. 413. (2) It does not appear from this record that the defendant below offered any testimony to support its exceptions to the commissioners' report, much less that the court below refused to hear such testimony or made any erroneous rulings in respect thereof. This being so, no question arises upon this record upon which it is the province of this court to pass. *Railroad v. Almeroth* 62 Mo. 344; *Lee v. Railroad*, 53 Mo. 179; *Bridge*

*Co. v. Schaubacker*, 49 Mo. 557-8.    (3) Independently of the above, this court cannot, from this record, determine whether the facts and proof did or did not justify either the findings of the court below, or the conclusions reached by the commissioners and sustained by the circuit court against appellant's exceptions. The record contains none of the evidence taken below, though it shows that the action of the circuit court was based upon evidence; and, in the absence of it, this court must presume that the circuit court ruled correctly.    *Wood v. Nortman*, 85 Mo. 301; *Cress v. Blodgett*, 64 Mo. 453; *State v. Brown*, 75 Mo. 317; *Road Co. v. Dennis*, 67 Mo. 440-1; *Railroad v. Almeroth*, 62 Mo. 344; *City of Kansas v. Railroad*, 84 Mo. 413. (4) In addition to these presumptions, the report of the commissioners was in conformity with the order of the court and the requirements of the statute.    (*a*) The law does not require them to state in their report that they viewed the premises; that they did so in fact, the report plainly shows.    *Omnia presumuntur rite*, etc. *Hicks v. Ellis*, 65 Mo. 184; *Railroad v. Ridge*, 57 Mo. 600-1.    (*b*) As to the points and manner of crossing, said report is sufficiently definite for all practical purposes.    Whatever "latitude" was therein allowed to plaintiff was unavoidable, for the reasons given in the report, and there is nothing in the record to show that any injury to defendant could result therefrom. (*c*) The appellant's contention here in respect of its so-called "wild track," and of the action and recommendation of the commissioners concerning the same, is not borne out either by the averments in the pleadings or by the commissioners' report.    (5) Appellant cannot be heard in this court upon any question of its alleged title to the property upon which its so-called "wild track," near Trudeau street, is laid ; since this record contains neither any evidence nor any rulings of the court below upon that question, nor anything to show that the court

erred in respect of the same. *City of Kansas v. Railroad*, 84 Mo. 413; *Wood v. Nortman*, 85 Mo. 301; *Cress v. Blodgett*, 64 Mo. 453. (6) No decision of this court is referred to in appellant's brief in support of the views therein urged; and not one of the cases cited from other states is relevant to any question presented by this record.

BLACK, J.—The plaintiff, the St. Louis Transfer Railway Company, is a corporation organized under the laws of this state for the purpose of building and operating a transfer railroad from the southern to the northern portion of the city of St. Louis. The proposed route, with two tracks, is, for the most part, along the public wharf of the city. The defendant has tracks and switches which are also located on the wharf. The plaintiff desired to join and unite with some of these tracks of the defendant, and to cross others, but was unable to come to any agreement with the defendant. Thereupon the plaintiff brought this suit to have commissioners appointed to ascertain the points and manner of making the crossings and intersections and to ascertain the compensation to be paid the defendant therefor. The suit or proceeding is founded on section 765 of the Revised Statutes of 1879, which provides that any railroad company shall have power "to cross, intersect, join and unite its railroad with any other railroad before constructed, at any point in its route, and upon the ground of such other railroad company," etc.; "and if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined by commissioners to be appointed by the court as is provided in this chapter for the condemnation of lands for railroad purposes."

The defendant filed an answer, to which there was a reply. Upon these pleadings the court heard evidence

and made a finding to the effect that it would be necessary for the plaintiff to join, unite and connect with the track of defendant near the foot of Rutger street, and near the foot of Almond street, and to cross and intersect with the track of defendant near the foot of Trudeau street. The court also appointed commissioners "to ascertain and determine the points and manner of the crossings and connections of said plaintiff's railroad with said tracks of, or connected with, defendant's railroad above mentioned, and the amount of compensation to be made therefor respectively, if any." The commissioners in their report state "that the railroad crossing, to unite and connect the track of the plaintiff's railroad with the levee track of the defendant's railroad upon the public wharf near the foot of Rutger street in St. Louis, should be placed within ten feet of either the north or south lines of the street produced eastwardly, in such manner and position however as that no part of said crossing or 'lead bars' shall be opposite to the end of said street."

A like report is made in respect of the Almond street connection, and in respect of these two connections the commissioners say " the latitude given to the positions of the crossings at Rutger and Almond streets is for the purpose of proper alignment of railroad frogs and lead bars placed in the common mode of crossings of parallel railroads with proper angles and length of lead best adapted to such crossings."

The report concerning the award of damages, and the crossing and intersection of Trudeau street is as follows: "The commissioners find that the railroad crossing to unite and intersect with tracks of the plaintiff's railroad near Trudeau street, as described in the order of the court, should be placed on the public wharf between two hundred and fifty and three hundred feet south of the south line of Trudeau street produced eastwardly. This crossing applies only to the west

track of the plaintiff. The east track of the plaintiff should occupy the portion of the wharf on which the "wild track," so called, of the defendant's railroad is located, for a distance of about two hundred and fifty feet. To make this condition possible a bank of earth about eight feet high will be necessary from the point where the west track of plaintiff should cross the Iron Mountain and Southern railroad 'wild track' to about where the north line of Trudeau street produced eastwardly would intersect this bank when made. In length this bank would be about three hundred feet, or such other reasonable length as will admit of a good connection and crossing to be made, which should be here made in fashion and form similar to other crossings hereinbefore described."

Numerous exceptions were filed to this report, all of which were overruled and exceptions saved; but the record does not contain any of the evidence offered upon the hearing of the exceptions or at any other stage of the trial.

1. The report does not in terms state that the commissioners went upon and viewed the tracks where the connections and crossings were to be made, and for this reason it is insisted the report should be set aside. It is the plain statutory duty of the commissioners to view the premises, but there is nothing in the law which requires them to recite that fact in their report. A failure on their part to conform to this requirement might be shown in support of the exceptions made to the report. Here, however, none of the evidence is preserved, and there is, therefore, nothing to show that the court erred in overruling this exception.

2. The next objection is that the commissioners made no award of damages to defendant, their finding being in effect that defendant would not be damaged by the proposed connections and crossings. The circuit court has the power to hear evidence upon the question

of the amount of compensation allowed by the commissioners, and may award a new appraisement, upon good cause shown, and the ruling of the circuit court in respect thereto may be reviewed by this court on error or appeal. 58 Mo. 491; 62 Mo. 343; 67 Mo. 439. Nor is the power of the court to review the report confined to the question of compensation. 94 Mo. 536. But this court does not enter into a critical examination of the evidence offered on a hearing of the exceptions made to the report as to the compensation which should have been awarded by the commissioners. Their award is made from their knowledge acquired from an inspection of the premises, and it is only where the damages awarded are manifestly excessive or inadequate that this court will interfere. See authorities before cited. As the evidence offered on this objection to the report is not preserved, there is nothing before us for review, so far as compensation to defendant is concerned. It must be remembered that these crossings and intersections are all made on public property, and by the report the plaintiff must be at the cost of making and keeping them in repair, and there is nothing unreasonable in the report in allowing no damages to the defendant. It is true that in speaking of the cost of these connections the report mentions *crossings* only, but it is evident from other portions of the report that the commissioners had in mind connections and intersections as well as crossings.

3. A further objection is made to the report on the ground that it is indefinite in this, that it does not locate the *points* at which the crossings and intersections shall be made, and does not determine the *manner* of making them. We will consider first the Rutger street intersection. The eastern terminus of this street is upon the public wharf. Opposite the front of this street the defendant has one and the plaintiff two tracks, all running north and south along the wharf. As to this connection, the commissioners say it "should be placed within ten feet of either the north or south lines of the

street produced eastwardly, in such a manner and position, however, as that no part of said crossing or lead bars shall be opposite to the end of said street." The statute, it will be seen, says "the *points* and *manner* of such crossings and connections shall be ascertained and determined by the commissioners." The commissioners say they allow the latitude given by them for the purpose of proper alignment of the frogs and lead bars, and this is a sufficient explanation so far as the latitude of ten feet is concerned. But the objection that the report leaves it optional with the plaintiff to place the connection either at the north or at the south line of the street deserves more consideration. The circumstances may be such that the point should have been fixed definitely at one of these places, but there is nothing in the record to show that the defendant is in the least prejudiced by reason of the fact that plaintiff can connect at either street line. The statute does not mean that the point of connection must, in all cases, be so specifically located that there can be no variance whatever. Much must depend upon the location and surrounding circumstances. The report on its face and in the absence of any further showing seems to satisfy all practical demands, and that is sufficient. The defendant argues that the question thus left open by the report may have been the very one upon which the parties could not agree, and this may be true. But no such a showing is made by this record. These observations dispose of a like objection made to the Almond street connection, and to the crossing of the plaintiff's west track at Trudeau street.

The report contemplates that the connections and crossings shall, in their construction, conform to common usage in like cases, and we see no objection to it in this respect.

4. Finally as to the Trudeau street intersection. The pleadings admit that defendant has a side or switch track which comes in upon the wharf from the north of

Barton street and runs thence northwardly along the wharf to and beyond the foot of Trudeau street. This track was not completed, and not in a condition for use when the pleadings were filed in this case; this is the track which is designated as a "wild track" in the commissioners' report. The plaintiff, at this place, as elsewhere along its line, proposes to construct two tracks, and the commissioners after providing where the plaintiff's west track shall cross this incompleted switch or sidetrack proceed to say : "The east track of the plaintiff should occupy that portion of the wharf on which the "wild track," so called, of defendant's railroad is located, for a distance of two hundred and fifty feet."

The specific objection to this part of the report is that the commissioners were appointed to locate the crossings and intersections and nothing more; and, without authority, they dispose of two hundred and fifty feet of the defendant's right of way and that too without compensation. The petition does allege that this sidetrack of the defendant was an obstruction to the public wharf and was unauthorized; but it goes on to say that the plaintiff's projected road crosses and intersects it, and that the plaintiff had requested defendant to agree upon the point of intersection and upon the compensation to be paid defendant. The answer denies that the location of the switch was unauthorized. The court found that defendant had partly constructed and was in possession of the switch or sidetrack, and that it was necessary for the plaintiff to cross and intersect the same. It is very clear from all this that the court did not find or adjudge that the location of this switch track by defendant was unauthorized. This is clear too from the fact that the court appointed the commissioners to determine the points and manner of the crossing and connection of plaintiff's road with this side or switch track of defendant, and to ascertain the damages to the defendant arising therefrom. No other power or authority was conferred upon them. Yet the report

says the east track of plaintiff shall occupy two hundred and fifty feet of the defendant's track. The profile map filed with the plaintiff's petition also shows that plaintiff's east track is located on this switch track. As we understand this report, it in effect condemns two hundred and fifty feet of the defendant's sidetrack and appropriates the same to the use of the plaintiff. We see nothing in the order of the court which will justify any such action on the part of the commissioners. The order of the court and the commissioners' report are inconsistent, and as we understand them cannot be reconciled and made to harmonize. It is one thing to provide for connecting plaintiff's track with that of the defendant, but it is another and a different thing to say the plaintiff may lay its own track on two hundred and fifty feet of the defendant's incompleted switch. It may be that in point of fact the defendant has no right to lay its sidetrack on the wharf at the foot of Trudeau street, but these commissioners were appointed on the theory that the defendant had such right, and yet that right is disregarded in the report. As at present advised this exception to the report should have been sustained. The judgment must, therefore, be reversed and the cause remanded, and it is so ordered. All concur.