[Birmingham Railway & Electric Co. v. Birmingham Traction Co ]

# Birmingham Railway & Electric Co.
# v. Birmingham Traction Co.

## Condemnation Proceedings.

1. *Condemnation proceedings; when appeal lies from probate court to Supreme Court.*—Under the provisions of the statute (Code, § 1717) in *ad quod damnum* proceedings, an appeal will lie direct to the Supreme Court from the order of the probate court granting an application for a right to condemn a right of way across the tracks and right of way of another railroad company, if taken within thirty days and before an order of condemnation on the assessment of damages by the commissioners is entered under section 1720 of the Code. (*Ala. Midland R. Co. v. Newton*, 94 Ala. 443; *L. & N. R. R. Co. v. Peoples Street Railway & Imp. Co.*, 101 Ala. 331; *M. & C. R. R. Co. v. Hopkins*, 108 Ala. 159, in so far as they conflict with the proposition here announced, overruled.)

2. *Rights of purchaser of street railroad to organize a corporation; applicable to sub-purchaser.*—The provisions of the statute conferring upon the purchaser of a street railroad at a judicial sale, the authority to organize a corporation, with all the powers, rights and capacity of a corporation organized under the general law, are not limited to the first or immediate purchasers at said sale, but extend and embrace sub-purchasers as well; and where such sub-purchasers, by regular proceedings, as prescribed by the statute, organize a corporation and transfer all the rights, powers, privileges and franchises held by the original street railway, such later company acquires and is entitled to exercise all of the rights, privileges and franchises previously granted by special acts to the original corporation.

3. *Corporations; parol evidence as to meeting of stockholders.* Where it is shown that at a meeting of the stockholders of a corporation no report or written memorandum or minutes of the proceedings of such meeting were kept, parol proof of the proceedings of the stockholders at said meeting is admissible in evidence.

APPEAL from the Probate Court of Jefferson.
Heard before the Hon. E. H. CABANISS, Special Judge.

The proceedings in this case were instituted by the Birmingham Traction Company filing a petition in the probate court of Jefferson county, seeking to have condemned a right of way and a crossing along and over the right of way and track of the Birmingham Railway & Electric Company, the point at which the crossing was to be made being in the town of Woodlawn near Birmingham.

It was averred in the petition that the Birmingham Traction Company was a corporation duly created and organized under the laws of Alabama and had authority to construct, own and operate railroads and street railroads in the county of Jefferson, and had authority to construct, own and operate a line of street railroads in the city of Birmingham to and through the town of Woodlawn in said county; that it was constructing a line of road to be operated by electricity, through the town of Woodlawn, and that it was necessary to have the right of way sought to be condemned, for the purpose of constructing said road; and that it had received the consent of the municipal authorities of the town of Woodlawn to so construct and operate its line along and across the street where the Birmingham Railway & Electric Company's line of street railroad is now operated.

The respondent demurred to the petition, upon the ground that it did not show that the Birmingham Traction Company had power under its charter or otherwise to have condemned the right of way sought in the petition. The demurrer was overruled.

Upon the hearing of the cause, the petitioner offered in evidence the act of the General Assembly of Alabama entitled "An act to enlarge the powers, rights, franchises and privileges of the East Birmingham Land Company, a corporation organized and chartered in Birmingham, Alabama, under the general laws of said State," approved February 11, 1887, as found in the acts of the General Assembly of 1886-87, p. 301. The defendant objected to the introduction of said act in evidence, because it was irrelevant, incompetent and did not tend to show that the petitioner had the right to condemn

the right of way and crossing sought to be condemned. The court overruled the objection, and the defendant duly excepted.

The petitioner then offered in evidence the act of the General Assembly entitled "An act to change the name of the East Birmingham Land Company, a corporation organized under the general laws of the State of Alabama * * * to the East Birmingham Land & Railroad Company, and to further enlarge the rights, powers, franchises and privileges of said corporation," approved February 25, 1889, found on page 582 of the Acts of 1888-89. The defendant objected upon the same grounds to the introduction of this act, and duly excepted to the court's overruling his objection.

The petitioner then offered in evidence the proceedings in the probate court of Jefferson county, incorporating the Birmingham Traction Company, with the certificate of incorporation of said company. The defendant objected to the introduction in evidence of these proceedings upon the same grounds, and duly excepted to the court's overruling this objection. These proceedings showed that the petition for incorporation was signed by G. H. Clark, John London and Alex. T. London. The proceedings of incorporation were regular and duly incorporated the Birmingham Traction Company; said George H. Clark, John London and Alex T. London being the incorporators.

The petitioner then offered in evidence a deed of trust executed by the East Birmingham Land Company to the Mercantile Trust & Deposit Company of Birmingham on July 30, 1888, in and by which the said East Birmingham Land Company conveyed to the Mercantile Trust & Deposit Company, in trust to secure $50,000 of first mortgage bonds, the property, rights, franchises and privileges of the East Birmingham Land Company mentioned and described in the proceedings for the incorporation of the Birmingham Traction Company.

The petitioner then offered in evidence a deed dated August 24, 1897, from N. W. Trimble, special commissioner, to George H. Clark, Alex. T. London and John

London, in and by which there was conveyed the property, rights and franchises of the East Birmingham Land Company mentioned and described in said deed of trust to said George H. Clark, Alex. T. London and John London.

The petitioner also offered in evidence a quit-claim deed from the owners of the first mortgage bonds in the said East Birmingham Land Company and Mercantile Trust & Deposit Company, trustee, to the said George H. Clark, Alex T. and John London, by which deed there was quit-claimed unto the said grantees, all the right, title and interest of the grantors or any of them in and to the property conveyed by the East Birmingham Land Company to the Mercantile Trust & Deposit Company.

There was also introduced in evidence a deed dated August 25, 1897, from George H. Clark, Alex T. London and wife, John London and wife to the Birmingham Traction Company, by which deed the grantors therein conveyed to the Birmingham Traction Company all their right, title and interest in said property conveyed to the Mercantile Trust & Deposit Company, and by it conveyed to them, and which was purchased by them at the sale under foreclosure of said trust deed.

It was also shown by the evidence introduced that the deed of trust to the Mercantile Trust & Deposit Company was regularly foreclosed upon default being made for the payment of the debt secured thereby by the East Birmingham Land Company, and that at the sale one Charles Turner was the highest bidder, and that he transferred in writing his bid to George H. Clark, Alex. T. and John London, to whom the special commissioner executed said deed to the property involved.

It was also shown that the Birmingham Traction Company had acquired the right from the city of Woodlawn by ordinance, regularly adopted, to construct the street railway along the street where the crossing occurred.

Upon the examination of several witnesses introduced by the petitioner, it was shown that the route of the Birmingham Traction Company along which the condemnation was sought was a new route.

8

George H. Clark, a witness for the plaintiff, after having testified that there were but three stockholders in the Birmingham Traction Company, who were George H. Clark, Alex T. London and John London, further testified that these stockholders met at the office of the company, and, all being present, decided to change the location of the East Birmingham Railway to the new route, along which the right of way was now sought to be condemned; that no minutes were kept of this meeting, or of the decision of the stockholders to change such location, and no notice of such meeting was given to the stockholders prior to the time said meeting was held. The respondent moved to exclude the evidence of this witness upon the ground that it did not appear that the said stockholders were called together by notice given to them, and that it appeared that no minutes of their action were kept. The court overruled the objection, and the defendant duly excepted.

Upon the hearing of all the evidence, the court granted the application of the Birmingham Traction Company for an order of condemnation, and appointed commissioners to assess and report the damages and compensation to which the Birmingham Railway & Electric Company was entitled by law. To the rendition of this decree the defendant duly excepted. From this decree of the court the Birmingham Railway & Electric Company prosecutes the present appeal, and assigns as error the several rulings of the trial court to which exceptions were reserved. In this court the appellee, the Birmingham Traction Company, moved to dismiss the appeal upon the ground that an appeal would not lie in condemnation proceedings direct to the Supreme Court from a decree rendered in the probate court.

WALKER, PORTER & WALKER and R. H. PEARSON, for appellant.—Section 1717 gives an appeal to the Supreme Court from the interlocutory order required to be made by the probate court granting or refusing the application, and the appeal given by section 1720 to the circuit court or city court is from another and distinct judgment of the

[Birmingham Railway & Electric Co. v. Birmingham Traction Co.]

probate court, which is an order of condemnation made upon the report of the commissioners assessing the damages and compensation to which the owner of the land is entitled. These two judgments are entirely separate and distinct, and the anomaly of having two appeals from one judgment to different courts could not arise. The appeal given by section 1717 to the Supreme Court is not violative of section 7, article XIV of the Constitution, because it does not take away from the parties the right to have the damages determined by a jury—a common law jury of twelve men—as did the provision of the statute that was construed in the Postal Telegraph case, which gave an appeal from the order required to be made by the probate judge on the assessment of damages made by a jury of six.—*Postal T. C. Co. v. A. G. S. R. R. Co.,* 92 Ala. 331; *Odum v. Rutledge, etc., R. R. Co.,* 94 Ala. 488.

ALEX T. LONDON and JOHN LONDON, *contra.*—In the absence of express authority no appeal from an interlocutory order in the cause will lie and produce the effect which the appellant has produced here, of suspending the whole proceeding pending the determination by this court of the right to ask condemnation. Section 1717 does not allow an appeal from an interlocutory order in the cause directly to this court.—*Woodward Iron Co. v. Cabaniss,* 87 Ala. 328; *A. M. R. Co. v. Newton,* 94 Ala. 447; *Postal T. C. Co. v. A. G. S. R. R. Co.,* 92 Ala. 331; *L. & N R. R. Co. v. Peoples, etc., Co.,* 101 Ala. 331; *M. & C. R. R. Co. v. Hopkins,* 108 Ala 159.

DOWDELL, J.—In proceedings for the condemnation of land for public uses, there is a manifest distinction between the law as it existed under the Code of 1886, Art. 2, page 698, embracing sections 3207 to 3220, and the present statute, Code 1896, Art. 1, embracing sections 1712 to 1726. Under the former, only one hearing was provided from which an appeal could be prosecuted, and upon this hearing all questions of law and fact, including the assessment of damages to the landowner by a constitutional jury of twelve men, provided for under section 3210, were finally determined. Under

the procedure, as it exists under the present statute (Code of 1896), there are two hearings from which appeals may be prosecuted; the first being upon the filing of the application and before any assessment of damages is had, and is in its nature and character preliminary. Upon this hearing, the question of whether or not the application for a condemnation should be granted, is determined, and from such judgment of the court an appeal is authorized direct to the Supreme Court by section 1717. If, upon such hearing, the application is granted, then follows the proceedings for the appointment of commissioners to assess compensation and damages to the land owner, with provisions for hearing evidence by such commissioners in ascertaining the amount of damages and compensation, also the making of their report to the probate court and the order to be made by said court thereon.—§§ 1718-1719. From the assessment of damages and compensation thus made, section 1720 provides for an appeal by either party to the circuit court, "and on such appeal the trial shall be *de novo*, but no appeal shall suspend the judgment if the applicant shall give bond, with good and sufficient surety, to be approved by the probate judge, to pay such judgment as shall be rendered on appeal." It is clear that the appeal authorized by the statute direct to this court from the decree of the probate court on the hearing of the application is from an interlocutory decree or order, while the appeal authorized from the assessment of damages to the circuit court is from a final decree of the probate court on the report of the commissioners awarding compensation and damages. We apprehend that there can be no doubt but that it is clearly within the province of the legislature to provide for an appeal at any stage of the proceedings, and also for an appeal from the judgment of final determination of the cause; and, also, that it is within the province of the lawmaking power in such provision for appeals to authorize generally both appeals to be taken, either to the same appellate court, or to different appellate courts.

By an act of the legislature, approved February 28th, 1889 (Session Acts, 1888-89, p. 112), section 3210 of the

Code of 1886 was amended to the extent of reducing the jury for the assessment of damages and compensation from twelve to six jurors, and by this amendment the constitutionality of the statute was raised. The question thus raised by said amendatory act was before the court for consideration in the case of the *Woodward Iron Co. v. Cabaniss,* 87 Ala. 328, and the objection to the constitutionality of the statute was met by holding that the constitutional right of a trial by jury of twelve men was preserved by section 3640 of the Code of 1886, which authorized an appeal from the judgments and decrees of the probate court to the circuit court, where the opportunity of a trial by jury was afforded. Following this case was the case of the *Postal Telegraph Cable Co. v. Ala. Gt. So. R. R. Co.,* 92 Ala. 331, in which the appeal was prosecuted direct to this court from the decree of the probate court under the statute subsequent to the amendatory act of February 28, 1889, and in which case a motion was made to dismiss the appeal. In this case it was held by this court (following the decision made in *Woodward Iron Co. v. Cabaniss, supra,* wherein it was said by SOMMERVILLE, J., speaking for the court, that the statute in question would be clearly unconstitutional in denying the right of trial by a constitutional jury, but for section 3640 of the Code, which preserved that right by an appeal to the circuit court, in which a jury trial could be had), that the two appeals authorized, one by section 3215 and the other by section 3640, Code of 1886, could not exist together without creating not only the anomalous state of having two appeals pending at one and the same time from the same judgment, with the possibility of a reversal in one and an affirmance in the other, but with the attendant possibility of operating a denial of the right of trial by a constitutional jury in the event an appeal was prosecuted otherwise than under the provisions of section 3640; or, in other words, that the provision for an appeal direct from the probate court, under section 3215, put it within the power of one of the parties to take away from the other party the right of a trial by jury guaranteed by the constitution.

In this conection, we will here repeat what was said in the *Postal Telegraph Cable Case, supra,* by this court, speaking through McClellan, J., as forcibly presenting the difficulty and objection obtaining under the then right of the two appeals as authorized by the law: "We have then two separate and distinct, and wholly different provisions as to appeals from the preliminary assessment of damages in *ad quod damnum* proceedings.    In one the appeal is on bill of exceptions for correction of errors of law.    In the other, the appeal is on the merits, and for a trial *de novo*.    The one is to this court.    The other is to the circuit court.    The former affords no opportunity for a jury trial, and if it stood alone, the whole system would be, for this reason, unconstitutional and void.    The latter secures to the parties this constitutional right, and of its own force saves the system from invalidity on this account.    In the first, the appeal may be taken at any time within three months from the order of condemnation.    By the terms of the last, the appeal may be prosecuted at any time within a year.    The present appeal is taken by the movant on a bill of exceptions directly from the probate to this court.    The motion made by the appellee to dismiss the appeal raises the question as to whether both the provisions to which we have referred can stand.    If either must fail, it must be that one which undertakes to authorize an appeal to this court, since that the other is of force in this class of cases is *stare decisis,* and since the whole system would come under the ban of the constitution, if the right to appeal to the circuit court should be denied.    So that the real question is, whether the statutory provision which undertakes to give a right to come here on bill of exceptions is not so inconsistent with the constitutional right effectuated by section 3640 as to be nugatory."    In this case it was decided, following the case of *Woodward Iron Co. v. Cabaniss, supra,* in order to preserve the statutory system for the condemnation of lands from the constitutional objection of the denial of the right of trial by jury, that the statute authorizing the appeal direct to this court on bill of exceptions must give way.

It must be here remembered and observed that at the time of these decisions by this court, there was but one hearing in the probate court from which an appeal was authorized. Subsequent to the decision in the case of *Postal Telegraph Cable Company, supra,* by act approved February 18, 1891, (Session Acts, 1890-91), the statute was again amended. We say *subsequent,* because the record in that case shows that the cause was submitted before the passage of said act, and no reference is made to it.

Following this case, came the cases of the *Alabama Midland Railway Co. v. Newton,* 94 Ala. 443; *Louisville & Nashville R. R. Co. v. The People's St. R'y Imp. Co.,* 101 Ala. 331, and *Memphis & Charleston R. R. Co. et al. v. Hopkins,* 108 Ala. 159, in which the doctrine laid down by the court in the *Postal Telegraph Cable Company* case, *supra,* was reaffirmed, and furthermore assuming, which was evidently an oversight, that the amendatory act of February 18, 1891, received construction in that case. In the present statute, Code of 1896, the provisions of that act are substantially embodied, though in a more orderly and methodical arrangement, which, together with other sections, make up the system of condemnation procedure under which the proceedings in the present case were had. The objection of having two appeals pending at one and the same time from the same judgment, as the law stood at the time of the decision in the *Postal Telegraph Cable Co.* case is obviated under the present statute, since the two appeals are from different judgments. But the difficulty remains of a possible denial of the constitutional right of a trial by jury if full operation be given section 1717 in every case as to the time prescribed in said section tion within which the appeal may be taken. It is not impossible, indeed, not improbable, for a case to occur, in which the right of appeal under section 1720 may arise within the period covered by section 1717, and be lost in a race of diligence, by the applicant for condemnation first securing an appeal under section 1717, on the preliminary judgment. We say lost, because the statute provides that the appeal under section 1720 must

be taken within thirty days after the order made on the report of the commississioners assessing damages and compensation, and an appeal taken from the preliminary order at this stage, operating to suspend any further proceedings in the probate court, would cut off the right of appeal from the order on the report of the commissioners, at least until a determination of the first appeal, and unless such first appeal should be determined within the period for taking the second, the right would be forever lost. In order to meet this objection, and also to preserve the right of appeal given under section 1720 which must be taken "within thirty days after the making of the order of condemnation on the report of the commissioners," and which is necessary to save the whole system from falling under the ban of the constitution, the only solution of the difficulty, that we find, is in construing section 1717 as giving to the party thirty days in which to appeal, except as limited by the right of appeal given under section 1720. In other words, that the right of appeal under section 1717, may be exercised at any time within the thirty days allowed, provided it is so exercised before any order is made on the report of the commissioners under section 1720, at which time the right of appeal under this latter statute arises. This construction saves both statutes and gives to each the fullest effect and operation that can be given without offending against the constitution.

From what we have said, it results that the cases of the *Ala. Midland R'y Co. v. Newton*, 94 Ala. 443, *Louisville & Nashville R. R. Co. v. People's St. R'y & Imp. Co.*, 101 Ala. 331, and the *Memphis & Charleston R. Co. et al. v. Hopkins*, 108 Ala. 159, in so far as they are in conflict with the views herein expressed, must be overruled. The motion, therefore, to dismiss the appeal in this case must be denied.

The record shows that the East Birmingham Land Co. had conferred upon it powers to construct a railroad, and in connection with the railroad, it was entitled to and had granted to it certain special privileges which are set forth in the special acts of the General Assembly

(Acts, 1886-87, p. 301). The record further discloses that by a subsequent act additional privileges were granted, authorizing a change of name to that of the East Birmingham Land & Railway Co., (Acts, 1888-89, p. 582). We think there can be no doubt if the franchises granted by the special acts referred to had been transferred to the appellee, it had ample power to condemn the *locus in quo*. It is shown that the East Birmingham Land Co. executed a mortgage to secure bonds issued for the purpose of building the railroad, and that by the terms of this mortgage its franchises were included therein; that there was a foreclosure of this mortgage and a sale of the property, including the franchises, and that the purchasers organized the Birmingham Traction Co., appellee here, under the provisions of the act of February 14, 1891, now contained in sections 1199-1201, both inclusive, of the present Code, and the only question presented seems to be whether by these proceedings the appellee acquired the franchises granted by the special acts referred to in the record. Having complied with the terms of the statute with reference to organization, it is clear that the purchasers should have, hold and enjoy the franchises provided they organize as a corporation, and having done this, it seems to us that the franchises are vested in the new corporation. The construction contended for by appellants of section 1199, that the purchasers mentioned in the statute should be limited to the first or immediate purchasers, and should not be extended to and embrace purchasers from these purchasers, or, in other words, sub-purchasers, seems to us entirely too narrow and contracted. Ordinarily and generally, we might say, the word "purchasers" would embrace sub-purchasers, and there is nothing contained in the statute suggestive of a different interpretation to be applied.

Objection was made to parol proof of the proceedings of the stockholders of the appellee. The evidence discloses that there was no record or written memoranda of the minutes kept, and in such case we think there can be no doubt that the proceedings had by the

[Clark, Admrx. v. Dane.]

stockholders in their meeting might be shown by parol evidence.—2 Cook on Corp. 714; *Alice v. Jones,* 45 Fed. Rep. 148.

We find no reversible error in the record, and the decree of the probate court is affirmed.