THE STATE ex rel. MISSISSIPPI RIVER & BONNE TERRE RAILWAY ·COMPANY v. DEARING, Judge.

In Banc, March 20, 1903.

1. **Condemnations:** RAILROAD CROSSINGS: SELECTION: DANGEROUS CHARACTER: EXCEPTIONS. The report of the commissioners as to the dangerous character of the crossing selected by the railroad seeking to condemn a crossing over an older road, is not final, nor is their report as to the manner of making such crossing. On the contrary it is the duty of the court to hear evidence as to whether or not an overhead crossing, of one railroad over the tracks of another, would be less dangerous to human life than a crossing at the grade of the defendant's track, and as to whether or not the crossing, because of curves in the track, would be more dangerous than one somewhere else. These are questions which the court should hear and submit to the jury, if they are raised by exceptions to the commissioners' report, nor should such exceptions be stricken out on the theory that the statute makes the report of the commissioners, as to the character and manner of the crossing, final, for it does not make their report final.

2. ———: ———: ———: SUPERINTENDING AUTHORITY OF COURTS. The right of one railroad to cross and intersect another is not an arbitrary power, but is to be exercised in subordination to the judgment of commissioners appointed by the court to fix the point and manner of crossing and that commission is also subject to the supervising control of the court. This is true for three reasons: first, vested property rights of citizens can not be extinguished by the decision of an extra-judicial body, such as would be a commission with

final powers; second, the State has a vital interest in the safety of the employees of both roads and of the traveling public; third, it is not the purpose of the statute to destroy the uses to which the older road has already been devoted.

3. ———: ———: ———: PURPOSE OF STATUTE. The statute governing the crossing of one railroad by another refers to something more than the matter of compensation. Its purpose is that the crossing shall be made with the minimum risk of hazard to life and property, and the smallest injury to the railroad which has already acquired the right of way.

4. ———: MANDAMUS: EXCEPTIONS TO COMMISSIONERS' REPORT. Where exceptions to the commissioners' report in a condemnation proceeding are struck out and thereby exceptors are denied any hearing at all as to the point and manner of the crossing, this court will compel the trial court by mandamus to hear evidence on the point, not with a view of controlling its decision, but for the purpose of compelling it to exercise a jurisdiction which the statutes have imposed on it.

### Mandamus.

PEREMPTORY WRIT AWARDED.

*Huff & Sleeth, R. A. Anthony, J. F. Green* and *Martin L. Clardy* for relator.

(1) The court ordered that "said exceptions be stricken out, which is accordingly done, leaving in each of the cases only the exceptions challenging said report of the commissioners as to the inadequacy of damages and compensation awarded defendant by such report." (2) It is not true that, in the respect mentioned, the commissioners' report is final. If the report of commissioners to determine the place and manner of crossing is final, it must be because they are the commissioners provided for by section 21 of article 2 of the Constitution. Such commissioners must act as a unit; two of their number would be as powerless to make a report as eleven jurors would have been to render a verdict before the adoption of the recent amendment to the Constitution. If section 1035 is not to be construed with section 1268, it must be because the

purpose of its passage was to give effect to the constitutional provision referred to, and if that was its object, a report signed by two commissioners is no report, and Judge Dearing ought to be commanded to appoint new commissioners, remitting to them all the matters which were before the other commissioners. The report is either void for non-conformity with the Constitution or it is reviewable by the court. The reports of the commissioners provided for by section 1268, as well as reports of commissioners under similar statutes, have only been sustained by this court on the ground that the law provides for a judicial examination of such reports and a trial by jury. Railroad v. Randolph Town Site, 103 Mo. 469; Turlow v. Ross, 144 Mo. 234; 3 Elliott on Railroads, secs. 1122, 1125. If the circuit court has power to enjoin, and if it would be its duty to enjoin, the erection of a crossing that would endanger life and property, it ought to be able to review the finding of commissioners authorizing such dangerous crossing. Leaving section 1268 out of consideration, the circuit court, as a court of general jurisdiction, would have the power to examine and pass upon the reports made by commissioners appointed by it, and it would be its duty to do so to the end that its orders and processes might not be abused. Unless section 1268 is to be absolutely disregarded in a crossing case, relator is entitled to be heard on its exceptions. Railroad v. State, 34 Pac. 555; Railroad v. Railroad, 100 Mo. 419; Hannibal Bridge Co. v. Schaubacker, 49 Mo. 555; St. Louis v. Buss, 159 Mo. 9; St. Louis v. Lanigan, 97 Mo. 175; Miss. Riv. Bridge Co. v. Ring, 58 Mo. 491. (3) Mandamus is the proper remedy. The motion filed to strike out certain of the exceptions, which Judge Dearing sustained, can amount to no more than an objection to any evidence that the relator might offer as tending to show the dangerous character of the crossing selected and the injury which would be otherwise wrought to the railroad

company by approving the particular place of cross-. ing and the character of the structure to be made.   It is relator's whole contention that the court refuses to hear such evidence.   This court is not asked that Judge Dearing be directed to sustain the exceptions, or any of them, but it is asked that he be directed to hear the evidence on the exceptions, and ''although mandamus will not lie to compel an inferior court to render a decision in a particular way, it will lie to compel a court to act, and the existence even of another remedy will constitute no impediment to the remedy of mandamus.''   State ex rel. v. Laf. Co. Ct:, 41 Mo. 225; Dunklin Co. v. District Ct., 23 Mo. 454. ''It will lie to compel a judge to enter a judgment:'' State ex rel. v. Klein, 140 Mo. 502.   ''And to compel the granting of an appeal:'' Patton v. Williams, 74 Mo. App. 451.   ''And to compel the transfer of a case to the Supreme Court:''   State ex rel. v. Smith, 152 Mo. 444.   ''To compel the trial judge to furnish a transcript of the evidence in the case:''   State ex rel. v. Zachritz, 145 Mo. 259.   See, also, Milling Co. v. Boggess, 80 Mo. App. 299; State ex rel. v. Philips, 97 Mo. 335; State ex rel. v. Cape Girardeau Ct. Com. Pl., 73 Mo. 560; Spelling on Extra. Rem., sec. 1369; High on Extra. Leg. Rem. (3 Ed.), sec. 151; State ex rel. Best v. Jones, 155 Mo. 576; State ex rel. v. Gregory, 83 Mo. 136; State ex rel. v. Renick, 157 Mo. 298; State ex rel. v. Talty, 166 Mo. 560.

*F. M. Trissal, Smith & Anthony,* and *Byrnes & Bean* for respondent.

(1)   It appearing upon the face of the alternate writ that the real object of the relator is not to compel but to reverse and be relieved from the effects of the action and decision of the respondent, the writ should be quashed, as mandamus can only direct that a de-

cision can be made, but not how it shall be made, and can not be made to serve the office of a writ of error, or to reverse a decision already made.    State ex rel. v. Lafayette County Court, 41 Mo. 222; State ex rel. v. Flad, 108 Mo. 614; State ex rel. v. Young, 84 Mo. 95; State ex rel. v. Buhler, 90 Mo. 560; State ex rel. v. Smith, 105 Mo. 9; State ex rel. v. Smith, 107 Mo. 532; Rosenheim v. Harstock, 90 Mo. 365; State ex rel. v. Thayer, 10 Mo. App. 540; American Construction Co. v. Railroad, 148 U. S. 372; s. c., 13 S. E. 761; Ex parte Flippin, 94 U. S. 348; Kimberlin v. Conners, etc., 104 Fed. 654; Ex parte Loring, 94 U.S.418; In re Rice,155 U. S. 376; Ex parte Perry, 102 U. S. 183; In re Parsons, 150 U. S. 150; Ex parte Morgan, 114 U. S. 174. (2)  To allow a writ of mandamus to review a ruling or inter-locutory order made in the progress of a cause would be to introduce the supervisory power of the Supreme Court in a cause while pending in an inferior court and to prematurely decide it, and thereby subvert the whole system of jurisprudence, and would also deprive other litigants of their rights in the Supreme Court. (3)  The Supreme Court can not, without examination of the exceptions that were stricken out, determine whether or not respondent improperly construed their language or the force and effect of their averments, and when it enters upon that duty it at once begins the work that it can only do when the case is brought before it on appeal.  (4)  The disguised substance of the right of the relator which it alleges has been invaded, is its right to claim that the power and right of emi-nent domain shall be so construed and abridged (in violation of article 12, section 4, of the Constitution of Missouri), as to prevent its property being taken for public use the same as that of an individual.  The claim is predicated upon the proposition that its ex-ceptions set forth facts showing its exemption, but no such facts were set forth.  The petition for the con-

demnation of 1.10 acres of land stated, and it was found by the court, that it was necessary for the main line of railroad of the condemning company. The exception under which it is claimed to be exempt from appropriation avers that the land "has already been set apart and appropriated for public uses and can not again be condemned for a similar use." This exception was so indefinite and uncertain as to raise no issue at all, much less was it sufficient to show that the property was not subject to appropriation. Under no fair construction of what it states as a fact or as a conclusion is it claimed that the relator had previously appropriated it for use as part of its main line, nor that the use to which it had been dedicated was the same use for which it was being taken. As to the main line and Crawley switch, no dedication to public use could prevent the right to cross; therefore, the exceptions were irrelevant and entirely immaterial in each of the cases, and in no respect showed that the commissioners had exceeded their authority or that any of the property was not subject to appropriation.    (5) "It has been decided in this and other jurisdictions, and is the accepted law, that the fact that land sought to be condemned for a public use is held, owned and used by a corporation organized for private gain, is no defense to the right of condemnation, and the same principle is declared even where the property sought to be condemned is held and used by a corporation possessing the power of eminent domain and using the same for public purposes." Coal Co. v. Coal and Mining Co., 161 Mo. 288.    (6)   As to the main line and Crawley switch proceedings the right to cross could not be affected by the fact that they were part of the relator's railroad previously devoted to the public uses and this is all that the exceptions pretend to aver, and besides no right of appeal from nor right to review the acts of the special tribunal fixing the point and manner

of crossing is given by statute, and its award stands as a contract between the two companies. Railroad v. Railroad, 110 Mo. 510. (7) These exceptions amount to nothing more than declarations that the law of eminent domain should be so abridged, or construed, as that the property of a railroad in operation shall not be taken, under any circumstances, if that company claims that it needs it in carrying on its business, and that the question of the paramount necessity of the other company, or the question of the necessity for joint use, as recognized by this court in Railroad v. Railroad, 118 Mo. 599, shall not be considered at all. The exceptions charging the dangerous character of the crossing proposed were properly stricken out, because no evidence in support of them would have been admissible upon a trial. Railroad v. Railroad, 118 Mo. 599. (8) If the exceptions were not definite and specific and did not go to material matters, it was the duty of the court to strike them out, or by some other method to disregard them and to confirm the report of the commissioners. Brooks' Appeal, 32 Cal. 558; Higbee v. Peed, 98 Ind. 420; Mevanda v. Spurlin, 100 Ind. 350; Updegraff v. Palmer, 107 Ind. 181. (9) It is within the power and discretion of one railroad company to determine by the location of its route where it will cross another, and this discretion can not be interfered with by the courts. Railroad v. Railroad, 32 N. J. E. 755; Railroad v. Railroad, 97 Ill. 560; Railroad v. Railroad, 118 Mo. 599; Railroad v. Railroad, 44 Am. and Eng. R. R. Cas. 10; 2 Lewis on Eminent Domain, p. 892. (10) It can not be reasonably contended that the order made by Judge Dearing, sustaining the motion of the Southern Missouri Railway Company to strike out the exceptions of relator to the commissioners' report, tended to or did in any way deprive relator of its rights and property, or that its rights and property would be taken without due process of law by such order having been made. Ex parte Wall, 107 U. S. 265; Kennard v.

Louisiana, 92 U. S. 480; Pearson v. Yewdoll, 95 U. S. 294; Walker v. Sauvinet, 92 U. S. 92; Muray's Lessee v. Hoboken, etc., 18 How. 280.

GANTT, J.—This is an original proceeding in this court to obtain a peremptory writ of mandamus, directing Judge Dearing, judge of the Twenty-first judicial circuit of this State, to set aside an order made by him as judge of the circuit court of Jefferson county at the May term of said court for the year 1902, and on the 16th day of June, 1902, striking out the exceptions of the relator, the Mississippi River & Bonne Terre Railway Company, filed in certain condemnation proceedings by the Southern Missouri Railway Company, wherein said last mentioned company sought and seeks to condemn a right of way and crossing over what is known as the Crawley line or spur of the Bonne Terre railway, and also a crossing over its main line, also to condemn one and one-tenth acres of ground on the west side of and adjoining the right of way of the Bonne Terre railway, which it is alleged it purchased for the purpose of enabling it to replace a temporary bridge at Flat river.

These condemnation suits were commenced in the circuit court of St. Francois county at its May term, 1901. An answer was filed putting in issue the allegations of the petition and averring that the proposed crossings on the Crawley line and main line were near the foot of steep grades, which were approached by abrupt curvatures, and that if these crossings were permitted to be made at grade, it would subject the employees of both roads and their passengers to constant risk of injury.

The answer also alleged that the bridge of the Bonne Terre road over Flat river on its main line, near the south end of which the Southern Missouri road proposes to cross, is a temporary structure which it is its purpose to replace with a permanent bridge con-

structed at a different grade, which purpose will be defeated by the construction of the crossing as contemplated by the Southern Missouri, and that the one and one-tenth acres of land, all of which the Southern Missouri seeks to condemn and occupy, was purchased solely for the purpose of enabling the Bonne Terre road to reconstruct its bridge over Flat river, and without such strip it will be unable to carry out such purpose.

When the cause came on for hearing for the appointment of commissioners, the circuit court, it would seem, declined to hear any evidence at that time, except that which tended to prove that said plaintiff had made an effort to agree with said defendant therein as to the point and manner of crossing, and as to the connections to be made and compensation to be paid, holding that the other questions should be determined when the report of the commissioners had been filed.

Three commissioners were appointed to ascertain and determine in the two crossing cases ''the amount of compensation to be paid to the defendant railway company to cross its said railroad hereinbefore described, and also to ascertain the points and manner of such crossing and connections with defendants' railroad in the petition therein prayed to be appropriated and used as crossings as aforesaid,'' and in respect to the one and one-tenth acres of ground ''to assess the damages which the owner may sustain by reason of the appropriation of the property sought in the petition [therein] to be appropriated and condemned.''

The commissioners filed three reports, one in each of the original cases, in which two of the commissioners joined, and the third commissioner filed a separate and dissenting report.

As to the crossing on the Crawley line, the majority of the commissioners fixed the point of crossing on the line of the survey located and fixed by the Southern Missouri by its profile map of its route and adopted by

it, over the said Crawley line, at the grade fixed by said Southern Missouri, and assessed the damages at $500. As to the crossing of the main line, the majority also fixed the point of crossing of the Bonne Terre road on the line of survey located and fixed by the profile map of its route, filed by the Southern Missouri and adopted and filed by it in the clerk's office, and on the grade fixed by its said survey and location as evidenced by its profile maps; and on the then grade of the Bonne Terre's main line, and assessed the damages at $2,500.

As to the one and one-tenth acres, the majority of the commissioners also condemned said parcel, being a strip fifty feet wide, by specific metes and bounds, and containing 1.10 acres, and assessed the damages at $100, the said strip including also switches and side tracks thereon unless removed by defendant.

The third commissioner reported that the commissioners heard a number of witnesses as to the point of crossing, among others, all the railroad commissioners of the State, and two former commissioners, and other railroad men of experience, and locomotive engineers, who testified that to establish the said crossings at grade would be to hazard the lives of the passengers and employees traveling on both of said lines of railway; that in his opinion, the great weight of evidence was in favor of an overhead crossing, and he therefore found in favor of such crossings, and that to make the crossings at the places designated in the survey of the Southern Missouri would materially interfere with the uses to which the Bonne Terre road was authorized to put its road. He further reported that one of the commissioners who was a practicing lawyer maintained that neither under the laws of the State, nor the instructions of the court, were the commissioners authorized to make other than a grade crossing, and had no authority to change the location fixed by the profile map in any respect whatever.

Within the time allowed by law, the Bonne Terre company filed its exceptions to the said several reports. The venue of the cause was changed in November, 1901, to the circuit court of Jefferson county. On January 18, 1902, the Southern Missouri filed its motion to strike out these exceptions, and on June 16, 1902, the circuit court of Jefferson county sustained the motion to strike out the exceptions, save and except as to the inadequacy of the damages assessed, and upon the suggestions of the Bonne Terre road that it would make application for a writ of mandamus to require said court to hear said exceptions, postponed the hearing of the question of damages until this court had passed upon such application. Thereupon an application for this writ was made at the June term, 1902, and just prior to the adjournment of this court, and an alternative writ was awarded, to which Judge Dearing filed his return. The questions presented, arise on the pleadings thus filed.

## I.

Without reproducing the exceptions in full, it is sufficient to state that the issue raised by them was tersely stated by Judge Dearing when he sustained the motion to strike them out. He says:

"The defendant company filed its exceptions to the report of the commissioners; it filed its exceptions to the amount of damages awarded by the commissioners *as well as to the point selected and the manner of crossing.* The plaintiff company then filed its motion to strike out all that portion of the exceptions filed by the defendant company which referred to the point and manner of crossing. It is contended by plaintiff that there is no appeal allowed the defendant company from the finding or order of the commissioners in regard to the point and manner in which the plaintiff company shall cross the defendant company's right of

way and its tracks. It is insisted by the defendant company that the right of appeal does lie to the point and manner of crossing, as well as the amount of damages awarded.''

And Judge Dearing reached the conclusion, after a consideration of the statute law on this subject in this State, that even if he had heard evidence and reached the conclusion that the commissioners had decided different from what he would, there was no express or implied statute in Missouri authorizing him to substitute his opinion in place of theirs, whereby he might have fixed the point and manner of crossing; in a word, that he was not authorized to hear evidence tending to show that the commissioners had acted unwisely in fixing the point and manner of crossing, but that the commissioners' report was final and not subject to review by the circuit court.

The very able and learned counsel for the respondent have discussed many questions which are involved in the decision of this case in the circuit, which are not now before us. The sole contention of the relator in this proceeding, is that it was the duty of the circuit court to hear evidence on the issue as to the dangerous character of the crossing selected and the manner of crossing. Whether desired by counsel or not, it is not our purpose to pass upon the merits of any one of the numerous exceptions, nor to direct the circuit court how it shall decide any or all of them. The question is, was the circuit court right in holding it had no power to consider such exceptions, and that the report of the commissioners was conclusive alike on him and the defendant railroad?

The statutes apposite to this discussion are sections 1035 and 1268, Revised Statutes 1899.

Section 1035, Revised Statutes 1899, provides: ''Every corporation formed under this act shall, in addition to the powers hereinbefore conferred, have power . . . to cross, intersect, join and unite its

railroad with any other railroad before constructed, at any point on its route, and upon the grounds of such other railroad company, with the necessary turn-outs, sidings and switches and other conveniences, in furtherance of the objects of its connections; and every company whose railroad is or shall be hereafter intersected by any new railroad, shall unite with the owners of such new railroad in forming such intersections and connections, and grant the facilities aforesaid; and if the two corporations can not agree upon the compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined by commissioners to be appointed by the court, *as is provided in this chapter for the condemnation of lands for railroad purposes.*''

Section 1268, which is applicable to the condemnation of lands for railroad and other purposes, and which is also a part of said chapter 12, Revised Statutes 1899, provides: ''Upon the filing of such report of said commissioners, the clerk of the court wherein the same is filed shall duly notify the party whose property is affected of the filing thereof; and the report of said commissioners may be reviewed by the court in which the proceedings are had, on written exceptions, filed by either party in the clerk's office, within ten days after the service of notice aforesaid; *and the court shall make such order therein as right and justice may require, and may order a new appraisement upon good cause shown.*''

These two sections are *in pari materia* and must be construed together, especially so, as section 1035 requires the commissioners to be appointed as provided by the article in which both are found.

Such we think, moreover, has been the construction placed upon section 1035, and this court in K. C. Sub. Belt Ry. Co. v. Railroad, 118 Mo. 599, tacitly at least approved such a construction. In the absence of a provision making the ascertainment of the point and

manner of crossing by the commissioners *absolutely conclusive*, we think that sound reason is against such a construction. As said by Judge Bliss in Hannibal Bridge Co. v. Schaubacker, 49 Mo. l. c. 558: "To treat the opinion of commissioners sent out to view and assess the value of property as conclusive, is to place their finding higher even than a verdict of a jury, who, with their attention confined to a single case, have patiently listened to all the evidence and allegations of the parties. If obviously mistaken, their verdict may and should be set aside by the trial court, although the law gives no such general supervising power as is given by this statute over the action of the commissioners."

In Kansas City Sub. Belt Ry. Co. v. Railroad, 118 Mo. loc. cit. 614, Burgess, J., discussing the contention of the defendant in that case that the court erred in failing to give the jury specific instructions that a material interference, by the new road in crossing the older road, with the use of its road was not authorized and that they should provide for a crossing that would not work such a result, said: "This question has already been virtually disposed of, but even if it had not been we are of the opinion that as the commissioners were the sole judges of this matter, and as the order appointing them recites that they 'are appointed commissioners to fix and determine the points and manner of crossing, and connections sought to be made by the petitioner with and over defendants' tracks and right of way, to hear evidence,' etc., no further instructions were necessary."

Standing alone this announcement sustains the position of the learned circuit court that he was not authorized to interfere with the determination of the commission in fixing the point and manner of crossing, and that no amount of evidence would avail to change their findings. But this court did not stop with the above statement, but Judge Burgess continuing, says, "Moreover, the record discloses the fact that defendants were

heard *on this matter* both by the commissioners *and by the court,* on their motion to set aside the report of the commissioners, *which was subject to review and approval, or to be set aside by the court as it felt authorized to do.''* Similar expressions are found throughout the opinion, clearly indicating that the report as to the point and manner of crossing was subject to the approval or disapproval of the court, and that only as to damages by way of compensation, was the defendant entitled to a jury as a matter of course. The case of Chicago & Alton Ry. Co. v. Railroad, 110 Mo. 510, in no manner militates against the proposition that the court has the power on written exceptions to review the report of the commissioners. Judge BLACK expressly gives as one reason why the award of the commissioners in that case should be enforced by a bill in equity, that the defendant company ''got an award to which it made no objection whatever, and then took possession under the terms thereof.'' Why allude to its failure to object, if the report of the commission was absolutely conclusive and its objections would not have been considered?

The question at last is, does the circuit court in a condemnation proceeding under our statutes act in its judicial capacity, or is he a mere commissioner to appoint commissioners, and limited in his power merely to the specific act of making the appointment with no revisory power whatever?

We answer in the language of Judge NAPTON, in Railroad v. Lackland, 25 Mo. loc. cit. 527: ''In the main the general scope of the section (act) looks to the action of the *court* in its judicial capacity, and gives the court authority not only to pronounce a judgment which will pass a title to the land to the company and a right to the damages to the landowner, but 'to make all orders and take any steps' which in the opinion of the court will best promote the ends of justice.'' While the language of the statute is somewhat different now,

the words "as right and justice may require" are synonymous with those found in the statute when the Lackland case was decided.

And in that case, as in the subsequent cases, it was ruled that although no provision was made, in express words, for an appeal, an appeal was within the intention of the Legislature "because it may be safely said that it is at least doubtful whether that jurisdiction could be entirely cut off if the Legislature had so intended;" and he significantly inquires, "Could the Legislature provide an illusory compensation for private property taken for public use totally at variance with the true spirit of the Constitution, and, by placing its enforcement under the control of a selected tribunal and declaring the decisions of that tribunal final, thus place the subject beyond the reach of the courts?"

Unless section 1268 is to be disregarded in a crossing case, then the relator was and is entitled to be heard on its exceptions, and while the return asserts that there was a hearing and decision adverse to relator, we can not shut our eyes to the statement in the return, reiterating the ruling made when the exceptions were overruled, in substance that the finding or order of the commissioners fixing the point and manner of crossing could not be reviewed by the court and "any subsequent proceeding with regard to the commission would not refer to the point and manner of crossing for the reason that if another jury should determine otherwise there would be interminable litigation." We think it is obvious the court did not decide this point in any technical view of the form of the exceptions, but on the substantial ground that it had no authority to review the finding of the commissioners.

While our laws give one railroad the right to cross and intersect another, it is apparent that it did not give it an arbitrary power to do so. That right is to be exercised in subordination to the judgment of commis-

sioners appointed by the court to fix the *point and man-ner of crossing.*

That commission, however, is itself subject to the supervising control of the court which appointed it. It would be contrary to the spirit and the whole trend of our statutory and common law to hold that vested property rights of any citizen or corporation could be transferred or extinguished by the decision of an extrajudicial body and no opportunity afforded him or it to be heard in a court of justice.

So far no such construction has been given to our condemnation laws, and it will not do to say that the defendant in this case has no property right which permits it to appeal to the courts to protect. The Legislature has not so regarded its rights. The law requires as a precedent for maintaining the proceedings to obtain such crossing, that the new road shall first endeavor to agree with the old road as to the point and manner of crossing, and it has been held that such a commission may impose on the new road the duty and cost of the support of such a crossing. But the defendant is not alone concerned in such crossings. The State has a vital interest in the safety of the employees of both roads and the traveling public, and it is not the purpose of this statute to permit the new road to so cross the old one as to destroy the uses to which the old road has already been devoted.

Judge Elliott in his excellent work on Railroads, wisely says:

"The tendency of modern legislation and judicial authority is to discourage the construction of grade crossings on railways whenever it is possible to avoid same. Crossings at grade are not only a source of inconvenience and delay to companies operating trains over the crossings, but they are also a source of danger on account of collisions between trains and consequent injuries to employees and passengers. Whenever it is practicable to avoid a crossing at grade, equity may

interfere to prevent such crossing." [3 Elliott on Railroads, sec. 1122.]

"Where one railway company seeks to condemn and construct a crossing over the right of way and tracks of another at a place or in a manner not authorized by law resort may be had to equity for relief. If a company seeks a crossing at an improper place or seeks an unnecessary crossing or attempts to erect one in such manner as to materially interfere with the franchises of the company whose line is crossed, or in excess of lawful authority, a remedy by injunction is appropriate." [Ib., sec. 1125.]

The statute intends the crossing shall be made with the minimum risk of hazard to life and property and the smallest injury to the railroad which has already acquired its right of way.

The Supreme Court of Montana, in the case of Railroad v. State, 34 Pac. 558, says:

"We can not see how it is possible, looking solely to the words of the statute, to hold that all it refers to is the matter of compensation. It is very evident that the Legislature did not mean to invest the younger company with the power to cross at any point and in any mode it might elect, but that on the contrary it meant to prevent the arbitrary exercise of the right to cross the older line. If the three things (compensation, points and manner of crossing) can not be settled by negotiation, they must be brought before the appropriate tribunal for adjudication." The court cites many cases in support of its views:

In Railroad v. Almeroth, 62 Mo. 343, the circuit court declined to hear evidence on exceptions as to values and damages, and this court held then, as it has in numerous cases held, that it was the duty of the circuit court to review the commissioners' report as to all questions upon which defendant is entitled to a hearing. [Railroad v. Railroad, 100 Mo. 419; Hannibal Bridge

Co. v. Schaubacker, 49 Mo. 555; St. Louis v. Buss, 159 Mo. 9; St. Louis v. Lanigan, 97 Mo. 175.]

As said in Railroad v. Almeroth, supra, it is sufficient at this time to hold as we do that the circuit court erred in declining to consider the exceptions and evidence in support thereof. If the court considered the evidence offered before the commission inadmissible it could have afforded defendant a reasonable time to offer its witnesses in person.

If the defendant can not be heard on its exceptions it is denied any hearing at all.

## II.

That mandamus is the proper proceeding in the circumstances of this case we have no doubt whatever.

This court by express constitutional provision is granted superintending control over all inferior courts with power to issue writs of mandamus and other remedial writs.

In this case we are not asked to direct the circuit judge to sustain these exceptions or any one of them, but to require him to hear evidence on the exceptions of relator and to set aside his order overruling them; in a word, to exercise a jurisdiction which the statutes have imposed upon him and which he has, as we think, erroneously declined to exercise. In so doing we think it will be competent for him to approve the finding of the commissioners or set aside their report if he finds they have misapprehended their duty as interpreted by us, or he may modify and change their report by directing such crossings to be overhead or underneath the defendants' road if, upon the proofs before him, or that may be presented to him, he shall find that the proposed grade crossing will be more hazardous to the lives of the employees and passengers on said roads, or if deemed more satisfactory to him he may appoint a new commission and fully instruct them as to their

duties and powers as to fixing the point and manner of crossing, whether on grade, overhead or underneath defendants' tracks or at a different point if thereby the extra hazards are diminished or avoided. The principles upon which mandamus lies at this stage of the proceedings have been so recently reviewed by this court in State ex rel. Railroad v. Smith, 172 Mo. 446, and State ex rel. City of Stanberry v. Smith, 172 Mo. 618, that we deem it unnecessary to dwell further on that point than to cite the additional cases of State ex rel. Adamson v. Lafayette Co. Ct., 41 Mo. 225; Dunklin Co. v. District Ct., 23 Mo. 454; State ex rel. v. Klein, 140 Mo. 502; State ex rel. v. Smith, 152 Mo. 444; State ex rel. Bayha v. Philips, 97 Mo. 335; State ex rel. v. Cape Girardeau Ct. of Com. Pleas, 73 Mo. 560; Spelling on Extraordinary Remedies, sec. 1369; High on Extraordinary Remedies (3 Ed.), sec. 151.

It follows that a peremptory writ will be directed to Judge Dearing to proceed in accordance with the views herein indicated.

All concur, except *Fox, J.,* who having presided on circuit, takes no part in the decision.