136          SUPREME COURT          [Vol.

[Mobile & Birmingham R. R. Co. v. Louisville & Nashville R. R. Co.]

# Mobile & Birmingham R. R. Co. *v.* Louisville & Nashville R. R. Co.

## *Eminent Domain.*

(Decided April 22, 1915.   Rehearing denied June 3, 1915.
68 South. 905.)

1. *Eminent Domain; Right; Jury.*—Under §§ 3875 and 3878, Code 1907, and in view. of the previous eminent domain statute of the Code of 1886 and 1896, as construed by the court, the circuit court |or court of like jurisdiction, on proceedings by a railroad to condemn a crossing over the track of another railroad, on appeal from the probate court, properly determined the petitioner's right to condemn without the intervention of a jury.

2. *Same; Railroad Crossing; Compensation.*—Under §' 242, Constitution 1901, the crossing of one railroad by another is a taking of its property, and hence, the provision of that section is qualified by other constitutional provisions requiring that just compensation be made before taking.

3. *Same.*—Construing § 242, Constitution 1901, and §§ 3885 and 3867, Code 1907, a taking by one railroad merely for a crossing is distinguished from a taking generally under the last named section.

4. *Same; Necessity.*—Such right of crossing is subject to those general regulations and restraints inhering in the exercise of the usual right of eminent domain, and depends upon a reasonable necessity therefor, and the crossing must be located and constructed as not to inflict any unnecessary injury upon the road crossed, the necessity of the crossing having been shown; but the act of crossing is not required to do no injury whatever, nor is the crossing road required to select the place and mode which will least injure the railroad crossed, and such right to cross is not confined to the main track of the other road, but applies as well to its lateral and spur track and switches, and one crossing, or for that matter, several crossings does not necessarily exhaust the general right to cross.

5. *Same; Evidence; Sufficiency.*—The evidence examined and held to show that the crossing sought was a matter of reasonable necessity and should be granted, and that a switch and spur instead of a crossing were not reasonably practicable in respect to economy and convenience of operation, and that the threatened injuries set up were not such as to deny the right of condemnation for the crossing.

6. *Commerce; Interference with Interstate; Railroad Crossing.*—The condemnation under state laws of a crossing over a railroad engaged in interstate commerce is not an interference with interstate commerce.

[Mobile & Birmingham R. R. Co. v. Louisville & Nashville R. R. Co.]

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL BROWNE.

Proceedings by the Mobile & Birmingham Railroad Company to condemn a right of way and crossing over the tracks of the L. & N. Railroad Company. From an order denying the right to condemnation, petitioner appeals. Reversed, rendered and remanded.

BESTOR & YOUNG, and T. H. STEVENS, for appellant.

GREGORY L. & H. T. SMITH, and JOEL W. GOLDSBY, for appellee.

SOMERVILLE, J.—(1) Under the rules of procedure in eminent domain, as originally formulated in the Code of 1886 (sections 3209-3216), the granting of a petition for condemnation was a question exclusively for the trial judge, and the function of the jury was confined to the assessment of the damages to be paid to the owner.—*Montgomery So. Ry. Co. v. Sayre*, 72 Ala. 446; *London v. Sample Lbr. Co.*, 91 Ala. 607, 8 South. 281.

When an appeal was afterwards given to the circuit court from the judgment of the probate court, the appeal was limited to a trial de novo of the damages to be assessed; and an appeal from the preliminary order granting or refusing the petition went directly to the Supreme Court.—Sections 1717-1720, Code 1896; *B. R. & E. Co. v. Birmingham Trac. Co.*, 128 Ala. 110, 29 South. 187.

Under the provisions of the Code of 1907, §§ 3875, 3878, every appeal from the probate court is to the circuit court, or court of like jurisdiction. If the petition was granted, the appeal is from the final order of condemnation, and "the trial shall be de novo."—Section

3875, supra. If the petition was denied, and the superior court on appeal "determines that the application should be granted, it shall proceed forthwith to have the damages and compensation assessed by a jury."

In the case of *Huntsville v. Pulley,* 187 Ala. 367, 65 South. 405, we held that the right of appeal to the circuit or other like court, in municipal assessment cases, required a trial by jury; and it was there said that a jury trial in such courts on appeal would always be intended, if not plainly inhibited. It was also said that a provision for a trial in such "court" might mean a trial by the judge alone, or by the judge and jury as in ordinary practice, according to the subject-matter, context, and general policy of the law.

Looking to the history, language, and policy of our eminent domain statutes, we can entertain no doubt but that the original functions of court and jury have not been changed, but are still preserved and distinguished under our present statutes, and that the petitioner's right to condemn is to be determined by the court without the aid of the jury; while the amount of damages to be assessed is a question exclusively for the jury. It follows that the trial court did not err in its determination of petitioner's right to condemn without the intervention of a jury.

(2, 3) Section 242 of the Constitution of 1901, repeating the language of section 21, art. 14, of the Constitution of 1875, provides that: "Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad."

It has been held that the crossing of one railroad by another is a taking of its property, and that the constitutional provision above quoted is qualified by other constitutional provisions requiring the payment of just compensation before taking.—*M. & C. Ry. Co. v. Birm-*

*ingham, etc., Co.,* 96 Ala. 571, 11 South. 642, 18 L. R.
A. 166; *Birmingham Tract. Co. v. Birmingham R. &
E. Co.,* 119 Ala. 129, 24 South. 368.

Conceding its obligation to make just compensation
for the exercise of the right to cross the defendant's
road, the petitioner conceives that its right to cross is
absolute and without restriction as to reasonable ne-
cessity for its own uses, or as to injurious consequences
to the defendant in the use of its own road. The de-
fendant insists, on the other hand, that the case is con-
trolled by section 3867 of the Code, which provides
that property already condemned or devoted to a pub-
lic use shall not be re-condemned to another and dif-
ferent character of public use unless there is actual ne-
cessity therefor, and unless the original use will not
be thereby materially interfered with. We think it is
entirely clear that section 3867 has no application to
railroad crossings, which are specially provided for by
section 3885 of the Code, and the right to which is sin-
gled out and safe-guarded against legislative inhibition
by section 242 of the Constitution. This distinction be-
tween a taking merely for a crossing and a taking gen-
erally under section 3867 seems to have been assumed
in the cases of *M. & G. Ry. Co. v. Ala. Mid. Ry. Co.;*
87 Ala. 501, 508, 6 South. 404, and *S. & N. Ala. Ry.
Co. v. Hight. Ave. Ry.,* 119 Ala. 105, 113, 24 South. 114.

(4) Nevertheless, this right of crossing is subject to
those general regulations and restraints which have al-
ways inhered in the exercise of the right of eminent
domain. As recently declared by this court: "An actual
necessity, for public purposes, of the specific land or in-
terest therein which is sought to be condemned, lies
at the very root of every proceeding invoking the exer-
cise of the power of eminent domain, for it is only upon
the theory of public necessity that any private prop-

erty, no matter how insignificant it may be, can be taken from its owner and, against his will, devoted to a public use."—*W. U. T. Co. v. S. & N. A. R. Co.,* 184 Ala. 66, 95, 62 South. 788, 796.

The right of one railroad to cross another is therefore dependent, in the first instance, upon a reasonable necessity for such a crossing; and, where such a necessity is shown, the crossing sought must be so located and constructed as not to inflict any unnecessary injury upon the road to be crossed.—*State v. Dearing,* 173 Mo. 492, 73 S. W. 485; *West Jersey Ry. Co. v. Atl. City, etc., Ry. Co.,* 65 N. J. Eq. 613, 56 Atl. 890; *Seattle, etc., Ry. Co. v. State,* 7 Wash. 150, 34 Pac. 551, 22 L. R. A. 217, 38 Am. St. Rep. 866; 33 Cyc. 245.

But the statutes which give the right to cross "do not require that there shall be no injury whatever to the rights of the road crossed, or require the selection of the place and mode which will least injure the company crossed, without regard to the interests and necessities of the other company, which must also be considered and the question determined according to the circumstances of the particular case."—Cyc. 246.

The right to cross, though given in general terms, is not confined to the main tracks of either road, "but applies to the lateral and spur tracks and switches constituting a part of the system and necessary to enable the company properly to carry on its business."—*East St. Louis, etc., R. Co. v. East St. L. Union R. Co.,* 108 Ill. 265; *K. C., etc., R. Co. v. La., etc., R. Co.,* 116 La. 178, 40 South. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831.

Nor does the making of one crossing, nor even of several, necessarily exhaust the general right to cross. The exigencies of commerce, the needs of a particular locality, and the welfare of the general public may all be

important, if not decisive, factors in determining the
propriety and necessity of additional crossings in the
same vicinity.—Elliott on Railroads, § 1124.

(5) The evidence in this case shows that the tracks
of the defendant railroad company, including its main
line and a side track for storage purposes, run along
Commerce street north and south on a general paral-
lel with the west bank of the Mobile river, at a distance
of about 150 feet from the water. Along this water
front numerous wharves or piers receive and discharge
the commerce of the sea for transshipment either sea-
ward of landward, or for local consumption, and this
includes, as estimated, about 20 per cent. of the for-
eign commerce of the port of Mobile. All of these piers
lie between One-Mile creek on the north and the inter-
section of Lipscomb and Commerce streets on the south,
and they are served chiefly by spur tracks of the Mo-
bile & Ohio and the Southern or allied railroads, run-
ning eastward across Commerce Street. Between One-
Mile creek and Lipscomb street, within a distance of
1,285 feet, the defendant's main line is intersected by
11 of these service tracks exclusive of the track in con-
troversy. The disputed track is intended to serve the
south side of new pier No. 5, built and owned by the
Southern Railway Company. The north side of this
pier, known as the Mallory dock, is served by a spur
of the Southern Company, which intersects the defend-
ant's tracks at a point about 45 feet north of the dis-
puted crossing. Besides the defendant's two tracks, and
paralleling them along this Commerce street water
front, are the main line of the Mobile & Ohio Railroad,
and two side or storage tracks of the Southern. Com-
merce street, as its name and location would indicate,
is the center of the export trade, and, besides the rail-
road lines mentioned, it accommodates numerous ve-

hicles plying between the river front and the city. The old main track of the Southern Railroad runs from its freight yards eastwardly along Beauregard street, and, curving southward before it reaches Commerce, it crosses the tracks of the Mobile & Ohio and of defendant at an acute angle at Lipscomb street, and connects with its side tracks on Commerce. This connection is 315. feet south of the front of new pier No. 5.

The track now sought to be established diverges from the Southern main line at a point about midway between Beauregard and Lipscomb streets, and crosses the several railroad tracks on Commerce at a slight angle, and enters the middle of the pier.

It is not seriously contended by the defendant that access by rail to the south side of the pier is not a matter of reasonable necessity to the Southern Railway Company. It is, however, very strenuously insisted that this frontal access across the defendant's main line by the addition of another crossing to the numerous similar crossings with which it is already burdened in this immediate locality is, under the circumstances, both unreasonable and unnecessary, and also highly injurious to defendant in the operation of its own road. The alternative proposed by the defendant is that the Southern Railway Company should serve the needs of this pier over its main line to the switch at Lipscomb street, thence back up Commerce over its own side track, and thence into the pier by a spur with a curvature of about 25 degrees. Whether or not this mode of service is reasonably practicable, and, if so, whether it compares favorably in economy and convenience of operation with the mode selected, and since 1907, actually used by the petitioner's lessee, is the chief controversial feature of the case as presented in the trial court.

[Mobile & Birmingham R. R. Co. v. Louisville & Nashville R. R. Co.]

A great mass of facts, and a still greater mass of expert opinions, have been adduced on either side of this issue. These expert opinions, about equally balanced in number as well as in quality, are as far apart in their conclusions as the east is from the west; and while the petitioner's experts declare that the frontal crossing now in use is greatly superior to the route proposed, in every aspect of its operation, the defendant's experts declare with equal assurance that the use of the latter would be actually advantageous to the Southern Railroad Company as compared with the former. In the face of these conflicting opinions, we have found it necessary to look primarily to the facts in evidence as a basis for our own conclusions; and, on the whole evidence, we are reasonably satisfied that the frontal crossing is vastly superior to the proposed route by way of the switch, so far as the interests of the petitioner, or its lessee, and of the general public are concerned, and hence that the contested crossing is a reasonable necessity to the petitioner for the prompt, practical and economical operation of its business as a carrier of commerce.

It is nevertheless insisted that the petitioner should be required to adopt, in lieu of the frontal crossing, the indirect route proposed by the defendant, though relatively disadvantageous, because of the serious injury inflicted upon the defendant by the construction and operation of this frontal crossing over its main line and side track. The chief elements of this injury, actual or threatened, are :(1) General injury to rolling stock which results from the jumping and jarring incident to passing over a crossing; (2) special injury to locomotive pilots from loose rails if the crossing is not well kept; (3) the danger of collisions; (4) the burden of keeping a lookout and of stopping or slowing

down trains for safety of operation, and the resulting interference with schedules; and (5) the loss of storage room for one car on the side track at the point of crossing. Most of the testimony tending to show inconvenience and injury under the first four items, as enumerated, is based upon the combined effect of all the 12 crossings leading to the river front. So far as this particular crossing is concerned, the test of use and an actual operation for seven years do not indicate that it is a serious additional burden upon the defendant's business. The injury to rolling stock is but general in its nature, and too gradual and minute for any sort of estimation. Trains are only occasionally delayed for a short time at one or the other of these several crossings, and only one collision has occurred at this crossing, and that not of a serious character. It is evident that the commerce handled at this pier must pass over the defendant's tracks at some point nearby, and, apart from a slightly aggravated danger of collision by reason of an additional track to be watched, we think it can make no material difference to the defendant whether a given number of cars cross over at the crossing in question, or over the old main track of the Southern to the Lipscomb street switch. There is no reason why this crossing cannot be kept in good order, and occasional lapses in this respect, readily redressible as they are, can offer no valid obstacle to the acquisition of the crossing. Nor is the loss of storage room on a side track a matter of serious concern, since it may be easily compensated for.

On the whole, we are of the opinion that, in view of the relative advantages and disadvantages to each of the roads concerned, and considering the interests of commerce and of the public who use this street and river front, there is no sufficient reason for a denial to

the petitioner of the right to the crossing sought to be condemned. In reaching this conclusion we have considered all the evidence presented by the record, and all of the various arguments pro et con. A full review of the evidence is wholly impracticable, and we cannot attempt it.

(6) We do not think that the condemnation under state laws of a crossing over a railroad which handles interstate commerce can be regarded in any of its aspects as an interference with interstate commerce. The authorities cited by appellee do not support its objection based upon that ground, and the objection is without merit.—See *Sou. Ry. Co. v. King,* 217 U. S. 524, 30 Sup. Ct. 591, 54 L. Ed. 868.

It results that the judgment of the circuit court must be reversed, and a judgment will be rendered granting the application for condemnation of a crossing as set forth in the petition. The cause will be remanded for further proceedings in accordance with the statutes.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.

### ON REHEARING.

SOMERVILLE, J.—Appellee is entirely correct in his contention that the judgment of the lower court in this case on issues of fact ought not to be reversed or set aside, unless it is so clearly wrong that a verdict of a jury would be set aside under the same conditions. This is in fact the view we have taken of the evidence, a view which is fully confirmed by a re-examination of the case.

We have not arbitrarily rejected expert opinions favorable to the defendant, but have simply concluded

that the undisputed facts of the case are so clear and certain of meaning that these expert opinions do not, and cannot, change their force and effect. They are not technical in their nature, and the deductions to be drawn are merely matters of arithmetic and common sense.

We are convinced that the judgment of the trial court is founded essentially upon misconceptions of the law rather than upon a misunderstanding of the facts; and our judgment is that the undisputed facts do not support the judgment, in the face of the law as we have written it above.

These remarks should have been incorporated in the original opinion, and their omission doubtless rendered obscure the real spirit of our holding.

With this explanation, the application for rehearing will be overruled.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.