[No. 1494, January 23, 1913.]
CITY OF ALBUQUERQUE, Appellee, v. ANTONIO
GARCIA, NICK METZ, et al., Appellants.

SYLLABUS (BY THE COURT).

1. A city has no power to condemn a community acequia, in actual use for conducting water, for the irrigation of lands, and to appropriate the same to the use of the public as a street, or for widening a street, as the statute authorizing cites to condemn and take lands for public use, as a street, neither in terms, nor by necessary implication, authorizes the taking of property already dedicated to a public use, and and an irrigation ditch, used for conducting water for the irrigation of lands, when in actual use as such, is so dedicated.

Appeal from the District Court of Bernalillo County.

W. C. HEACOCK and MANUEL U. VIGIL, for Appellants.

The law-making power of this state has always carefully guarded the interests of the water user for irrigation purposes and placed that above all other uses. Chap. 1, sec. 1, C. L. 1897; chap. 1, sec. 5, C. L. 1897; chap. 1, sec. 24, C. L. 1897; chap. 44, sec. 3, laws of 1903; chap. 49, sec. 44, laws of 1907.

The city of Albuquerque has no power to condemn property. State v. City of Newark, 23 Atl. 129; 15 Cyc. 567; Ligare v. Chicago, 28 N. E. 934.

Power to condemn must be expressly delegated or given by necessary implication. Chap. 1, sec. 1, C. L. 1897; chap. 1, sec. 5, C. L. 1897; sub-secs. 7 and 91, sec. 2402, C. L. 1897; sec. 2464, C. L. 1897; chap. 98, laws of 1903; sec. 1, and sec. 8, chap. 42, laws of 1903; sec. 20, chap. 40, laws of 1901; secs. 3 and 44, chap. 49, laws of 1907; chap. 97, laws of 1905; City of Moline v. Greene, 252 Ill. p. 477; Chicago & Alton R. R. Co. v. City of Pontiac, 169 Ill. 155; 10 Am. & Eng. Enc. of Law, 1094; Edwardsville v. Madison Co. 137 L. R. A. (N. S.) 101; 15 Cyc. 617; 15 Cyc. 614; New Haven /Water Co. v. Wallingford, 44

Atl. 235; Evergreen Cemetery Assn. v. New Haven, 21 Am. Rep. 643; Chicago & N. W. Ry. Co. v. City of Chicago, 151 Ill. 348.

Canals, acequias and ditches constructed in the arid regions for irrigating the lands, are for a public purpose and is public use. Albuquerque Land & Ir. Co. v. Gutierrez, 10 N. M. 177, 231; Ouray v. Goodwin, 36 Pac. 376; Irrigation v. De Lappe, 21 Pac. 825; Aliso Water Co. v. Baker, 30 Pac. 537; Lindsay Irr. Co. v. Nehrtens, 32 Pac. 802; Crawford Co. v. Hathway, 93 N. W. 781; Land & Irr. Co. v. Gutierrez, 10 N. M. 177; Umatilla Irr. Co. v. Barnhart, 30 Pac. 37; Miles v. Benton Twp., 78 N. W. 1004; McGee Irr. Ditch Co. v. Hudson, 22 S. W. 976; Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112; Lewis on Eminent Domain, 3rd ed., par. 308, vol. 1, p. 586; Nash v. Clark, 75 Pac. 371.

The only power conferred on municipalities in regard to acequias and irrigating ditches is to regulate them. Sub-sec. 89, sec. 2402, C. L. 1897; sub-sec. 11, sec. 2402, C. L. 1897; sec. 2485, C. L. 1897.

The power attempted to be used here is not a police power, it is the power of eminent domain. Lewis on Eminent Domain, 1st ed., par. 6; 94 U. S. 113; 97 U. S. 659; Lewis on Eminent Domain, 1st ed., par. 156; Markham v. Brown, 37 Ga. 277; Eaton v. B. C. & M. R. R. Co., 51 N. H. 504; 15 Cyc. 652; sec. 44, chap. 49, laws of 1907.

Even if the city had power in this instance, the condemnation proceedings would be fatally defective on account of the failure to make parties to the action several of the common owners of the Barelas acequia. Sec. 15, chap. 97, laws of 1905; People ex rel Johnson v. Whitney's Point, 32 Hun. 508; Matter of the City of Buffalo, 78 N. Y. 302; Breevort v. Brooklyn, 89 N. Y. 28; 66 N. Y. 395; Ill. Cent. R. R. Co. v. Chicago, 28 N. E. 740; Brush v. City of Detroit, 32 Mich. 42; Ross v. Highway Commrs., 32 Mich. 301; Thompson v. City of Detroit, 32 Mich. 303; Grand Rapids N. &. L. S. Ry. Co. v. Alley, et al. (Mich.).

As a rule municipal corporations cannot condemn property beyond its limits, unless authority to do so is expressly given. Houghton v. Huron Copper Co., 57 Mich. 547;

Drain Commrs. v. Baxter, 57 Mich. 127; McCarthy v. So. Pac. Co., 82 Pac. 615; Schmidt v. Densmore, 42 Mo. 225; Penn. R. R. Co.'s Appeal, 93 Pa. St. 150; Western Union Tel. Co. v. Penn. R. R. Co. 195 U. S. 540; id. 195 U. S. 594; Lewis on Eminent Domain, 3rd ed., par. 371; Penn. Teleph. Co. v. Hoover, 58 Atl. 922; Ga. R. R. & B. Co. v. Union Point, 47 S. E. 183; City of Tacoma v. State, 29 Pac. 847; Ga. R. R. & B. Co. v. Decatur, 59 S. E. 217; Chaffee's Appeal, 56 Mich. 244.

FELIX H. LESTER and HUGH J. COLLINS, for Appellee.

The authority of the city to exercise the right of eminent domain is positive. Lewis on Eminent Domain, 2nd ed., p. 618, sec. 262-A; id. sec. 262; sub-sec. 91 of sec. 2402, C. L. 1897; sub-sec. 92, sec. 2402, C. L. 1897; chap. 41, laws of 1903; chap. 97, laws of 1905; sec. 6, chap. 1, C. L. 1897.

The right to take property previously devoted to a public use. 15 Cyc. 614; sec. 15, chap. 97, laws of 1905; 15 Cyc. 615; Mobile, etc., R. Co. v. Ala. Midland R. Co., 87 Ala. 501; Springfield v. Conn. River Co., 4 Cush. 63; Butte, etc., R. Co. v. Mont. U. R. Co., 41 Pac. 232; Seattle, etc., R. Co. v. Bellingham Bay, etc. R. Co., 69 Pac. 1107; sub-sec 5, chap 27, laws of 1905.

MANUEL U. VIGIL and W. C. HEACOCK, for Appellants, in reply.

As to community ditches. Chap. 1, sec. 8, C. L. 1897; laws of 1903, p. 176.

### STATEMENT OF FACTS.

This was a proceeding instituted in the District Court of Bernalillo County by the City of Albuquerque, for the purpose of condemning a community acequia which runs through and across certain streets and alleys in said city, and through which said acequia the defendant, Metz, and his co-defendants, conducted water for the irrigation of land, the city alleging that it was its desire and purpose

to widen and improve the streets through which said irrigation ditch was conducted. Condemnation was awarded, appraisers were appointed, and the return of appraisement was filed with the Clerk of the District Court, and from the judgment of condemnation this appeal is prosecuted.

## OPINION OF THE COURT.

ROBERTS, C. J.—By this proceeding the City of Albuquerque has attempted to condemn the entire ditch running longitudinally through certain of the streets of said city, and the principal question presented by the record relates to the power of the city to condemn an irrigation ditch, in actual use as a community ditch, for conducting water for the irrigation of lands, and to appropriate said ditch to the use of the public as a street, thereby destroying said ditch. The authority for the condemnation is claimed under sub-section 91 of section 2402 of the Compiled Laws of 1897, and chapter 97 of the laws of 1905.

Appellee, in support of the right to condemn, insists, first, that the irrigation ditch in question was not devoted to a public use, and second, that the sections of the statute above referred to, authorizing cities to condemn property, by necessary implication, authorized the condemnation of property already devoted to a public use. The questions will be considered in their order.

New Mexico, being one of the arid states of the Union, and the successful cultivation of crops depending almost exclusively upon the ability of the land owner to procure water for the irrigation of his lands, the right to do so, and to, for such purpose, construct ditches and canals across lands of his neighbor, has been recognized for many years by the law-making power of the territory (now state). In 1851, the Territorial Legislature passed an act declaring that "the irrigation of fields should be preferable to all others," and forbidding any inhabitant of the Territory to construct any building to the impediment of the irrigation of lands or fields. Sec. 1, C. L. 1897. In 1874 an act was passed giving to all the inhabitants of the Territory of New Mexico the right to construct

either private or common acequias through the lands of others, requiring, however, compensation to be made for all damages done. See section 23, C. L. 1897; and the next succeeding section provides for the condemnation of a right of way for such ditch or acequia. By Section 3 of chapter 49, S. L. 1907, the right to condemn lands for irrigation ditches was conferred upon "the United States, the Territory of New Mexico, or any person, firm, association or corporation."

The ditch in question, as shown by the complaint, was a community acequia, and under section 8, chapter 1, C. L. 1897, was a corporation. By the sections quoted from the statutes of New Mexico, it is apparent that the owners of this ditch, whether private parties, or a corporation under said section 8, had the right to condemn a right of way for a ditch. It appears that the ditch had been in use for perhaps fifty years, but the record does not disclose in what manner or method the right of way for the said ditch was originally acquired; nor it is material, for as said by the court in St. Paul Union Depot Co. v. City of St. Paul, 30 Minn. 359:

"The question for the court, when it arises in a judicial investigation in such cases, is not how the land was acquired, but how it is used, or whether it is necessary for a public purpose. In re Water Commrs., 66 N. Y. 413."

Therefore the court is not concerned as to how the right was originally acquired to conduct water through the acequia in question.

In 1904 the State of Utah had a statute conferring upon any person or corporation the right to condemn a right of way for an irrigation ditch across private property. The plaintiff, Nash, sought by condemnation to enlarge a private ditch owned by Clark and others. Condemnation was awarded and the case was taken to the Supreme Court, and the contention there urged was that the use to be made of the property sought to be condemned was strictly private and in no sense a public use, and that both under the constitution of the United States and the constitution of Utah, which provide that "private property was not to be taken or damaged for public use without

just compensation," condemnation could not be awarded because the constitutional provision meant that private property could not be taken for strictly a private use, and the question as determined by the court, as stated, was, "Was the condemnation of appellant's land in this case in law and in fact, for a public use?" The court said:

"In view of the physical and climatic conditions in this state, and in the light of the history of the arid west, which shows marvelous results accomplished by irrigation, to hold that the use of water for irrigation is not in any sense a public use, and thereby place it within the power of a few individuals to place insurmountable barriers in the way of the future welfare and prosperity of the state, would be to give to the term 'public use' altogether too strict and narrow an interpretation, and one we do not think is contemplated by the constitution." Nash v. Clark, 27 Utah 158.

The court in the case above cited, sustained the judgment of the lower court awarding condemnation, and from the said court an appeal was taken to the Supreme Court of the United States, where the judgment of the lower court was sustained, and the reasoning upheld. See Clark v. Nash, 198 U. S. 361.

Our Territorial Supreme Court in the case of the Albuquerque Land & Irrigation Company v. Gutierrez, 10 N. M. 177, said:

"It is undoubtedly true that the diversion and distribution of water for irrigation and other domestic purposes in New Mexico, and other western states where irrigation is necessary, is a public purpose."

These cases would seem to dispose of the question as to the public use of the acequia in question, adversely to the contention of appellee. It is our view, therefore, that the use to which the irrigation ditch in question was devoted, was a public use, and consequently the city would not have the right to condemn the same and thereby destroy it, unless such right was expressly or by necessary implication conferred upon the City by the Legislature.

The Legislature, as the supreme and sovereign power of the state, may doubtless interfere with property devoted

to a public use for one purpose, and apply it to another; but the Legislative intent to do so must be stated in clear and express terms, or must appear from necessary implication. Sub-section 91 of sec. 2402, C. L. 1897, under which the power of condemnation is claimed by the city, reads as follows:

"That municipal corporations shall have the power and right of condemnation of private property for public use in the following cases, to-wit: for the laying out, opening and widening of streets and alleys and highways or approaches to streets * * * both within their corporate limits and for a distance of two miles outside of the same."

Chapter 97 of the session laws of 1905, under which authority is also claimed by the city, provides for the condemnation of property by railroad, telegraph, telephone companies, etc. Section 1, in so far as the same is material, reads as follows:

"In case lands or other property are sought to be appropriated by any railroad, telephone, telegraph company, etc."

This is followed by specific provisions applying only to the companies named, but section 15, which we apprehend is the section claimed by appellee to confer upon the city additional authority to condemn property in so far as the same is material, reads as follows:

"In addition to the purposes hereinbefore specifically mentioned for which property may be condemned under the provisions of this act, it may also be condemned for * * * public buildings and grounds for the use of any county, incorporated city, or city and county, village, town or school district * * * raising the banks of streams, removing obstructions therefrom, roads, streets and alleys, public parks, and all other public uses for the benefit of any county, incorporated city * * * which may be authorized by law * * * for canals, ditches, flumes, aqueducts, pipes, for irrigation."

It will be observed that no express power is conferred upon the city to condemn property already devoted to a public use in either of said sections, for any purpose whatever.

If it be argued that chapter 97 supra confers such power upon cities by the language used in section 1, "in case lands or other property are sought to be appropriated," and such argument were sound, the result would be that any corporation, municipal or private, or person, upon whom the right of condemnation was conferred by said chapter, could condemn property already devoted to a public use by another corporation or person, and in the case now under consideration, if the City of Albuquerque should prevail and condemn the ditch in question, the owners of the ditch, under the very chapter which the city invokes, could likewise condemn the right of way taken from them by the city and re-establish their ditch where it now is. The City of Albuquerque would have the power under this construction to condemn all the property of the A. T. & S. F. Railroad Co. within its limits; to condemn the County Court House were the same within its boundaries. We do not believe the language capable of the construction sought to be placed upon it by appellee.

In the case of Boston & Albany Railroad Co. v. City Council of Cambridge, 166 Mass. 224, the court had before it the construction of a statute conferring power upon the city of Cambridge to "take and hold by purchase or otherwise any and all such real estate as it may deem advisable," and "to lay out, maintain, and improve the same as a public park or parks." Under this power the city sought to lay out a park, embracing lands in actual use by a railroad company. The court said:

"The general words of the statute, conferring power to 'take and hold by purchase or otherwise any and all such real estate and lands within said city as it may deem advisable,' and to 'lay out, maintain and improve the same as a public park or parks,' was not intended to authorize the taking in fee of lands already devoted to a public use as parts of the actual location of a railroad, any more than to authorize the taking of the court house, the jail, or the house of correction, and the lands of the county of Middlesex under the same, also situated within the city."

The case of the Matter of City of Buffalo, 68 N. Y.

167, will be found very instructive upon this proposition.. Justice Folger, speaking for the court, says:

"In determining whether a power generally given, is meant to have operation upon lands already devoted by Legislative authority to a public purpose, it is proper to consider the nature of the prior public work, the public use to which it is applied, the extent to which it is applied, the extent to which that use would be impaired or diminished by the taking of such part of the land as may be demanded for the subsequent public use. If both uses may not stand together, with some tolerable interference which may be compensated for by damages paid; if the latter use, when exercised, must supercede the former; it is not to be implied from a general power given, without having in view a then existing and particular need therefor that the legislature meant to subject lands devoted to a public use already in exercise, to one which might thereafter arise. A legislative intent that there should be such an effect will not be inferred from a gift of power made in general terms. To defeat the attainment of an important public purpose to which lands have already been subjected, the legislative intent must unequivocally appear from the fact of the enactment, or from the application of it to the particular subject matter of it, so that by reasonable intendment, some especial object sought to be attained by the exercise of the power granted could not be reached in any other place or manner."

It is admitted that the use of the city and the use of the community acequia of the right of way in question cannot stand together, that the taking of the right of way sought to be appropriated by the city, will absolutely destroy the use to which it was heretofore subjected by the community acequia. The question of the right to condemn property already devoted to a public use by a city has been frequently before the courts for consideration, and such right has been uniformly denied where the statute was in general terms as are the statutes of New Mexico, upon which the City of Albuquerque bases its rights.

The following cases fully support the position taken, upon this question: City of Bridgeport v. N. Y. & New Haven R. R. Co., 36 Conn. 255; 4 Am. Rep. 63; City of Seymour, et al. v. Jeffersonville, Madison & Indianapolis R. R. Co., 126 Ind. 466; Van Reipen v. Jersey City, 58 N. J. Law Rep. 262; Boston & Albany R. R. Co. v. City Council of Cambridge, 166 Mass. 224; Milwaukee & St. Paul R. R. Co. v. City of Fairbault, 23 Minn. Rep. 167; St. Paul Union Depot v. City of St. Paul, 30 Minn. 359; N. J. Southern R. R. Co. v. The Long Branch Commissioners, 39 N. J. Law, 28; City of Moline v. Nelson H. Green, et al., 252 Ill. 475; Evergreen Cemetery Assn. v. City of New Haven, 43 Conn. 234.

That the Legislature did not intend, by implication, to confer the power upon cities to condemn acequias, used to conduct water for irrigation purposes, is made more manifest by the provisions of sub-section 89, section 2402, C. L. 1897, which gives to the city the right to make all needful and necessary police and other regulations for the flowing and use of water in public acequias for irrigation purposes within the corporate limits of such city. Also section 2485, C. L. 1897, which confers upon towns the right by ordinance, to compel ditches to be so constructed and cared for as to prevent the streets or highways from being flooded or injured thereby. This legislation would seem to imply that it was the intention of the law-making power of the state to confer upon cities and towns the right to regulate, rather than destroy the acequia, and it should not be held that the legislature intended to confer the right to destroy unless such power is expressly conferred, or arises by necessary implication. From what we have said it follows that the lower court erred in awarding condemnation, and the cause is therefore reversed with instructions to the lower court to dismiss the complaint as to appellants, and it is so ordered.