(115 So. 422)

## JEFFERSON COUNTY v. CITY OF BIRMINGHAM. (6 Div. 80.)

Supreme Court of Alabama. Jan. 28, 1928.

**1. Counties ⊙⇒37—Statute providing for election on change of courthouse site within city of Birmingham held to give final selection of site to courthouse commission (Gen. Acts 1927, pp. 467, 468, §§ 1, 6; Const. 1901, § 41).**

Gen. Acts 1927, pp. 467, 468, §§ 1, 6, providing for election to determine removal of courthouse in city of Birmingham and providing courthouse "may be erected on this site if approved by popular vote," *held* to vest matter of final selection in courthouse commission, making it unnecessary to institute condemnation proceedings in advance of election; result of election being to declare use of new site lawful under Const. 1901, § 41.

**2. Eminent domain ⊙⇒198(1)—Before granting petition for condemnation on trial de novo, court must find right existed to condemn property to proposed use (Code 1923, §§ 7491, 7492, 7499).**

Before petition for condemnation can be granted, circuit court on trial de novo must ascertain that property may be lawfully condemned to use for which it is sought under Code 1923, §§ 7491, 7492, and date when right and title vest in condemnor is fixed by section 7499 at time of final determination of the cause, not when order of condemnation is entered.

**3. Eminent domain ⊙⇒74—Order of condemnation need not be delayed until after compensation is paid (Code 1923, §§ 7491, 7492).**

Code 1923, § 7491, prescribing terms of order of condemnation, does not prevent entry of order before payment of compensation; appeal being taken from order of condemnation under section 7492.

**4. Eminent domain ⊙⇒169—Proceedings by county against city of Birmingham for condemnation of park site for erection of courthouse in advance of election to determine whether courthouse site could be removed held premature (Code 1923, §§ 7491, 7492, 7499, 7500; Gen. Acts 1927, p. 467; Loc. Acts 1927, p. 16, and p. 334).**

County *held* not entitled to maintain condemnation proceedings against city of Birmingham to acquire site in city park for purpose of erecting courthouse under general condemnation statutes, Code 1923, §§ 7491, 7492, 7499, 7500, and special condemnation statute, Loc. Laws 1927, p. 334, where county's right to condemn property was dependent upon result of election provided for by Gen. Acts 1927, p. 467, which had not yet been held, though Legislature had provided for building of courthouse and created courthouse commission under Loc. Acts 1927, p. 16; acts looking to acquisition of a new courthouse site being construed together.

**5. Eminent domain ⊙⇒1—Power of eminent domain is continuing power inherent in state as sovereignty.**

Power of eminent domain inheres in state as sovereignty, and is not granted by Constitution, but merely limited by it, and is continuing power not abrogated by appropriation to one public use.

**6. Eminent domain ⊙⇒47(1)—Statutes looking to condemnation of city park for use by county as courthouse site held within power of Legislature (Loc. Acts 1927, p. 16, and p. 334; Gen. Acts 1927, p. 467).**

State acting through Legislature by Loc. Acts 1927, p. 16, Gen. Acts 1927, p. 467, and Loc. Acts 1927, p. 334, could take property devoted to public use as city park and condemn it for use as courthouse site, subject to approval by people at election, since sovereignty of state continued over city as trustee of site and over public.

**7. Eminent domain ⊙⇒47(1)—State may devote its own property to public use, and Legislature determines expediency of diverting it from one public use to another.**

State may devote its own property to public use, especially a governmental use, for government itself or governmental subdivisions, and Legislature determines wisdom, expediency, or necessity of diverting property from one such use to another, subject to payment of compensation to owner.

**8. States ⊙⇒89—Acts of Legislature subjecting city park in Birmingham to use as county site when acquired for that purpose held grant of any contingent interest of state therein to county (Loc. Acts 1927, p. 16, and p. 334; Gen. Acts 1927, p. 467).**

Loc. Acts 1927, p. 16; Gen. Acts 1927, p. 467; Loc. Acts 1927, p. 334, providing for building of new courthouse in city of Birmingham, for election on change of site, and for condemnation of city park as proposed site, *held* to constitute grant of any contingent interest of state in park property to county.

Appeal from Probate Court, Jefferson County; J. P. Stiles, Judge.

Condemnation proceeding by Jefferson County against the City of Birmingham. From a judgment sustaining demurrer to and dismissing the petition, the applicant or petitioner appeals. Affirmed.

E. J. Smyer and Ernest Matthews, both of Birmingham, for appellant.

The three acts of the Legislature are in pari materia, and must be construed together in order to arrive at the intent of the Legislature, and to give each statute a field of operation if possible to do so. Crawford v. Tyson, 46 Ala. 299; Barr v. Weaver, 132 Ala. 218, 31 So. 488; Lehman-Durr & Co. v. Robinson, 59 Ala. 219; Abingdon Mills v. Grogan, 167 Ala. 155, 52 So. 596; State ex rel. v. Montgomery, 177 Ala. 212, 59 So. 294; 36 Cyc. 1151. A law enacted in the interest of

public welfare or convenience should be liberally construed to secure the accomplishment of the purpose intended. 36 Cyc. 1183; Mobile v. Turner, 45 Ala. 202; Cloverdale Homes v. Cloverdale, 182 Ala. 430, 62 So. 712, 47 L. R. A. (N. S.) 607; Napier v. Foster, 80 Ala. 380; Board of Rev. v. McDanal, 213 Ala. 349, 105 So. 191; Stewart v. L. & N. R. Co., 83 Ala. 493, 4 So. 373. Eminent domain is vested absolutely in the Legislature, limited only by constitutional restriction, and the exercise of the right may be delegated by the Legislature. If the use is public, the legislative judgment is conclusive upon the question of expediency. Sloss Co. v. O'Rear, 200 Ala. 291, 76 So. 57; Ala. Int. Power Co. v. Mt. Vernon Co., 186 Ala. 635, 65 So. 287; Steele v. County Comm., 83 Ala. 304, 3 So. 761; Sadler v. Langham, 34 Ala. 328; 20 C. J. 513, 533, 624; Lewis, Em. Dom. (2d Ed.) §§ 237, 238, 262. Property devoted to a public use can be condemned for another public use if the legislative intent to so subject is clear. Anniston & C. R. Co. v. Jacksonville, etc., R. Co., 82 Ala. 297, 2 So. 710; Mobile & G. R. Co. v. Ala. Mid. R. Co., 87 Ala. 505, 6 So. 404; 20 C. J. 598, 599, 602; Lewis, Em. Dom. (2d Ed.) §§ 261A, 262, 276. The property in question being held by the city as trustee for the public, the only way it can be taken is under the power of eminent domain conferred by the Legislature in the Condemnation Act. Douglass v. City Council, 118 Ala. 599, 24 So. 745, 43 L. R. A. 376; Hughes v. Tuscaloosa, 197 Ala. 592, 73 So. 90; Harn v. Common Council, 100 Ala. 199, 14 So. 9; Webb v. Demopolis, 95 Ala. 116, 13 So. 289, 21 L. R. A. 62; 43 C. J. 1344.

Horace C. Wilkinson, of Birmingham, for appellee.

Brief did not reach the Reporter.

BOULDIN, J. By act approved February 11, 1927, the Legislature provided for the building of a courthouse and jail for Jefferson county, and created a courthouse commission for this purpose. Loc. Acts 1927, p. 16. The commission was authorized to "select and designate the site" for the courthouse and jail. "Woodrow Wilson Park," owned by the city of Birmingham, was tentatively selected by the commission as a suitable site.

This site, while within the present corporate limits of the city of Birmingham, was in part without the city limits at the time Birmingham was made the county seat. In Rogers v. Wells, 216 Ala. 514, 113 So. 524, following Marengo County v. Matkin, 134 Ala. 275, 32 So. 669, this court held the county seat was limited to the corporate limits at the time it was so located, and therefore the courthouse could not be removed to the proposed site unless the removal was authorized by a majority vote of the electors of the county voting in an election called for the purpose, as required

by section 41 of the Constitution. This situation led to the passage of a general law (August 26, 1927), providing for elections in such cases (General Acts 1927, p. 467), and a local act (August 27, 1927), looking directly to the condemnation of Woodrow Wilson Park as a courthouse site for Jefferson county (Loc. Acts 1927, p. 334).

Pursuant to this latter act the courthouse commission, without awaiting an election, began proceedings in the probate court under the general statutes of eminent domain for condemnation of this site.

On the hearing the trial judge expressed his views in the following opinion:

"The court is of the opinion that this proceeding is prematurely brought, in that it is necessary for the board of revenue to pass a resolution authorizing the location of the courthouse and jail, in Woodrow Wilson Park, and that an election be held as required by law, authorizing the location of the courthouse and jail, on that property, before condemnation proceedings can be instituted to acquire it for Jefferson county for that purpose."

The appeal is to review the judgment rendered in keeping with this opinion. We are of opinion the trial court ruled correctly. The case involves a construction of the three legislative acts above cited. Together they constitute a scheme of legislation relating to the same subject-matter, considered and enacted by the same Legislature, and admittedly are to be construed in pari materia.

The view of appellants appears to be that the commission must first select the site; that before doing so, it should know the sum which must be paid in compensation therefor; that therefore the condemnation proceedings should come first, the amount of damages and compensation be ascertained, and upon this information select or reject the site. If selected, then the board of revenue may by resolution order the election, and, if approved by the voters, then the compensation may be paid and a final order of condemnation entered.

[1] We do not so construe these statutes in connection with the general condemnation law under which this proceeding must be had. The election statute provides that if the board of revenue shall "determine that it is advisable" to erect the courthouse on the proposed site, it shall pass a resolution to that effect and order an election. Notice of the election shall give a "description of the site on which the new courthouse is to be erected," and the ballots shall be "for" or "against" the erection of a courthouse on the described site. Section 1 declares the courthouse "may" be erected on this site if approved by a vote of the people in the election, and section 6 provides that in such event it "shall be permissible" to use that site.

By these provisions it appears the result of the election is to render lawful the use of such site under section 41 of the Constitution,

and when thus made available the matter of final selection is vested in the body charged with that duty. Very good reason can be seen for providing that the site voted for should not be unconditionally fixed as a location regardless of the compensation which may have to be paid therefor. Electors cast their ballots with this in view.

[2, 3] The more insistent reason appellants' plan cannot be approved appears from the condemnation statutes. Before a petition for condemnation can be granted, the court must ascertain that the property may be lawfully condemned to the public use stated. This determined, commissioners are appointed, and on coming in of their report, an order of condemnation is entered upon the payment of the damages and compensation so assessed and reported or the deposit of the same in court. Code, § 7491. This statute prescribed the terms of the order of condemnation. It does not mean no order of condemnation is entered until the compensation is paid. The appeal within 30 days is from the "order of condemnation," whereupon the cause is tried de novo. Code, § 7492.

On such appeal the circuit court must deny the petition unless there was at the time a right to condemn the property to the proposed use. Section 7499 fixes the date when right and title vest in the condemner, not when the order of condemnation is entered. Mobile & Birmingham R. R. Co. v. L. & N. R. R. Co., 192 Ala. 136, 68 So. 905; Leahy v. State, 214 Ala 107, 106 So. 599.

[4] There is no provision of law for granting a petition for condemnation conditioned upon future contingencies whereby the right of condemnation may be acquired, nor for the entry of an order of condemnation on such condition.

Section 4 of the Condemnation Act is analogous to the general statute giving six months in which to pay the compensation and perfect the right of entry. Code, § 7500. This provision is specially fitting in a case like this wherein the commission is empowered to sell the present courthouse site, and another heretofore acquired, the proceeds to go into the courthouse fund.

Another point raised in the court below and argued here is whether the county of Jefferson can acquire title to Woodrow Wilson Park under these statutes as a courthouse site. The matter being of public concern, and outlays of public funds to hold an election, etc., being involved, we deem it proper to now consider this question.

The city of Birmingham acquired title to the property from Elyton Land Company in 1883. The deed conveyed the property, "to be ornamented, kept and used as public parks for the city of Birmingham," and the property was so accepted and thereafter used.

[5-7] The power of eminent domain inheres in sovereignty. The Constitution is not a grant, but a recognition of such power, and a limitation on its exercise without just compensation first paid to the owner. It is a continuing power, not abrogated by appropriation to one public use. We hold that the state, acting through the Legislature, has full power to take property devoted to one public use, a public park, and condemn it to another public use, a courthouse site. That the city holds the property, charged with a public trust, does not defeat the power. The sovereignty of the state extended over the grantor and continues over the trustee and cestui que trust. The public interests are paramount. The Legislature determines the wisdom, expediency, or necessity of diverting the property from one public use to another, subject at all times to the condition that just compensation must be paid to the owner.

This deed to the city of Birmingham contained this further provision: "And it is agreed and understood and this conveyance is upon the condition that if the capitol of the state of Alabama should ever be located in the said city of Birmingham, the said mayor and aldermen of Birmingham are to make to the said state for its capitol building, the said block numbered twenty-one (21)," now Woodrow Wilson Park.

[8] It does not seem subject to debate that the state may devote its own property to public use, especially a governmental use as a seat of government for one of its government subdivisions. These acts of the Legislature, clearly subjecting this property to use as a county site when acquired for the purpose in the manner therein provided, constitute a grant of any contingent interest the state may have in the property to the county of Jefferson.

As touching these principles of the law of eminent domain, the following cases are cited: State v. L. & N. R. R. Co., 158 Ala. 208, 48 So. 391; Ala. Interstate Power Co v. Mt. Vernon-Woodberry Cotton Duck Co., 186 Ala. 622, 65 So. 287; Anniston & C. R. Co. v. Jacksonville G. & A. R. Co., 82 Ala. 297, 2 So. 710; Mobile & Girard R. R. Co. v. Ala. Midland Ry. Co., 87 Ala. 505, 6 So. 404; 20 C. J. 598, 599, 602; Lewis, Eminent Domain (2d Ed.) §§ 261a, 262, 276.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.