380 P.2d 830

STATE of New Mexico, ex rel. STATE HIGHWAY COMMISSION of New Mexico, T. B. White, Chief Highway Engineer, Petitioner-Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF DONA ANA COUNTY, and the City of Las Cruces, a municipal corporation, Defendants-Appellees.

No. 7196.

Supreme Court of New Mexico.

April 15, 1963.

Joseph L. Droege, John C. Worden, M. J. Underwood, Special Asst. Attys. Gen., Santa Fe, for appellant.

Earl E. Hartley, Atty. Gen., Shirley C. Zabel, Asst. Atty. Gen., Santa Fe, for appellees.

Rodey, Dickason, Sloan, Akin & Robb, John P. Eastham, Albuquerque, amicus curiae.

MOISE, Justice.

This appeal presents for determination the question of whether or not the State Highway Commission, hereinafter referred to as "Commission" must pay compensation to Dona Ana County, hereinafter referred to as "County" for property of the County taken by the Commission for highway purposes. It reaches us by appeal from a judgment in favor of the County in a declaratory judgment proceeding filed by the Commission.

The property being taken is owned by the County; part of it constitutes ground utilized in connection with the county court house, and part of it in connection with the county hospital. It is argued that both these uses are governmental and consequently the rule of State ex rel. Highway Comm. v. City of Albuquerque, 67 N.M. 383, 355 P.2d 925, is not applicable. This case differs from the City of Albuquerque case in that the instant case arose after Chap. 324, N.M. S.L.1959 (§ 22–9–39 et seq., N.M.S.A.1953) became effective and involves an interpretation of that statute, whereas the City of Albuquerque case arose before the effective date of that statute.

Concerning the governmental nature of the operation of a county hospital, there can be no doubt. We expressly so held in Elliott v. Lea County, 58 N.M. 147, 267 P.2d 131.

So far as the county court house property is concerned, it would seem to be self evident that the same is used and maintained by the county in its governmental function. Brooks v. Baldwin County, 273 Ala. 138, 135 So.2d 816; 2 McQuillin, Municipal Corporations 190, § 4.132; Rhine, Municipal Law 68, §§ 4–6.

Having determined that the property being taken is property held and used in a governmental capacity, does it follow that it may be taken by another agency of the state without compensation? The trial court concluded that insofar as §§ 22–9–39— 22–9–54, N.M.S.A.1953, are concerned, the property in question was held by the county in its proprietary capacity. In the view we take of the problem, this erroneous conclusion is immaterial.

Art. II, Sec. 20, New Mexico Constitution, provides that "Private property shall not be taken or damaged for public use without just compensation." The property in question being public property and used for governmental purposes, the County cannot claim it is guaranteed compensation under this constitutional provision.

We think it is established that absent statutory authority, property of one public body being used for public purposes cannot be condemned by another public body. City of Albuquerque v. Garcia, 17 N.M. 445, 130 P. 118. In State v. City of Albuquerque, supra, we found authority in the Commission to take park property of a municipality held in its proprietary capacity by purchase or condemnation under § 22–9–1, N.M.S.A.1953, upon payment of the fair and reasonable value of the land. We were not called upon, and did not pass on the question of whether the same result would follow if the property were used in a governmental function. We are here called upon to determine that question under § 22–9–1, N.M.S.A.1953, and §§ 22–9–39 to 22–9–54, N.M.S.A.1953.

■ Since compensation is not guaranteed by the constitution, we must determine if the legislature has evidenced an intent that public property may be taken without compensation. See State by State Highway Com'r v. Cooper, 24 N.J. 261, 131 A.2d 756.

We recognize the rule to be as stated in 2 Nichols, Eminent Domain 223, § 5.9, that:

"Over the property which a municipal corporation acquires as an agency of the state for the performance of the strictly public duties devolved upon it by law, the legislature may exercise a control to the extent of requiring the municipal corporation, *without receiving compensation therefor,* to transfer such property to some other agency of the government to be devoted to similar public uses or to other strictly public purposes. * * *"

In The School District of the Speers Borough School District v. Commonwealth, 383 Pa. 205, 117 A.2d 702, 703, the rule is stated as follows:

"Constitutional prohibitions against the taking of property without compensation apply only to privately owned property. Article I, Section 10 of the Constitution of Pennsylvania, P.S. Therefore it has always been held that the Commonwealth may take property of a political subdivision or agency without payment therefor, Chester County Institution Dist. v. Commonwealth, 341 Pa. 49, 57, 17 A.2d 212, the right to compensation in such cases being only a matter of grace or allowance by the Legislature."

The court then found in the statute a showing of legislative intent that compensation should be paid by one public body to another where lands used either in a governmental or proprietary capacity were taken for another public use.

Accordingly, our task is to determine if our legislature has provided for payment of compensation even though not required to do so by any constitutional limitations.

Specific authority for taking public property for highway purposes was provided by the legislature in Chap. 234, N.M.S.L. 1957 (§§ 55–10–1 to 55–10–10, inc., N.M.S.A. 1953), and, as already noted, it was held in State v. City of Albuquerque, supra, that such property could be taken and that compensation must be paid if the public property taken was held by the municipality in connection with its proprietary function.

· The county, together with amicus curiae aligned with it, argue that legislative intention that compensation be paid is clearly manifest in the alternative procedure provided for in Chap. 324, N.M.S.L.1959 (§ 22–9–39 et seq., N.M.S.A.1953). In support of their position they point to the title which reads:

"An Act Providing a Special Alternative Procedure Whereby the State, Any Commission, Department, Institution, Bureau, Agency or Political Subdivision May Condemn Public or Private Property for Highway, Street, Road, Sewer Line and Water Line Purposes, and Declaring an Emergency."

We also note the following language in the act which aids us in determining the legislative intent:

"Section 1. (§ 22–9–39, N.M.S.A. 1953) The legislature hereby determines and declares that the construction of urgently needed public roads and state highways is being delayed by the inability to enter into timely possession of the condemned property; that the landowner must wait the termination of prolonged litigation before he receives compensation for his property; that the delay in possession and therefore construction of the facility results in increased construction costs and thereby injuriously affects the public. The legislature, recognizing its responsibility, intends to solve these problems by establishing a special procedure whereby the state can enter into possession at the inception of the proceeding, and the interests of the property owner are protected by providing for an adequate bond prior to vesting of title and the taking of possession and also safeguarding the property owners' right to a speedy judicial determination of the total just compensation due. This legislation is necessary for the immediate preservation of the public peace, health, safety, the promotion of the general welfare and to minimize the economic and financial dislocation caused by highway construction.

"The special procedure set forth herein shall be in addition to any other condemnation procedure now in effect and shall not be construed as repealing or amending such procedure by implication."

"Section 2. (§ 22–9–40) As used in this act [22–9–39 to 22–9–54] : 'state' includes any commission, department, institution, bureau or agency thereof as well as all political subdivisions of the state."

"Section 3. (§ 22–9–41, N.M.S.A. 1953). The state is hereby authorized to acquire, either temporarily or permanently, public or privately owned lands, real property or any interests therein including water rights or any easements deemed to be necessary or desirable for present or future public road, street or highway purposes by gift, agreement, purchase, exchange, condemnation or otherwise. Such lands or interests in real property may be acquired in fee simple.

"For the purposes above provided, when state owned property must be taken, the state board of finance shall first determine the greater public need."

"Section 4. (§ 22–9–42, N.M.S.A. 1953). A. In any case where the state is the moving party to a condemnation action, a petition may be filed in the district court of the county in which such property is situated. * * The petition shall include but not be limited to the following:

\*  \*  \*  \*  \*  \*

"(4) An accurate surveyed description of the property to be condemned describing the same by metes and bounds and said description shall be incorporated in the petition with or without reference to maps or plats attached to said petition; the property of each defendant to be condemned shall be described separately, and each tract under separate ownership shall be consecutively numbered for ease in identification.

\*  \*  \*  \*  \*  \*

"(7) In the event that title to the property to be taken is vested in the state, a statement that the board of finance has proclaimed that the needs and purposes of the condemnor to be of a greater public need than that of the defendant in whom the title is vested.

\*  \*  \*  \*  \*  \*

"B. Parties Defendant.

\*  \*  \*  \*  \*  \*

"(1) If any property sought to be condemned belongs to the state, the head of the commission, department, institution, bureau, agency or political subdivision holding either title, or possession, shall be named as well as the commission, department, institution, bureau, agency or political subdivision itself.

\*  \*  \*  \*  \*  \*

"Section 7. (§ 22–9–45, N.M.S.A. 1953) The defendant shall set forth in his answer the following:

\*  \*  \*  \*  \*  \*

"C. The amount which the defendant claims as just compensation for the property taken or described in the petition and the amount, if any, of the various elements of damage, including damage to any remaining portion of a contiguous tract with unity of use and ownership."

"Section 14. (§ 22–9–52, N.M.S.A. 1953) A. For the purposes of assessing compensation and damages, the right thereto shall be deemed to have accrued as of the date the petition is filed, and its actual value on that date shall be the measure of compensation for all property taken, and also the basis of damages for property not taken but injuriously affected in cases where

such damages are legally recoverable; the amount of the award shall be determined from the evidence and not be limited to any amount alleged in the petition or set forth in the answer."

Chapter 324, § 15, N.M.S.L.1959, was amended by Chap. 75, § 1, N.M.S.L.1961, so as to read:

"After the petitioner has made payment in full to the clerk of the district court in accordance with the judgment in the condemnation action, the clerk shall certify upon the judgment that payment has been made thereon.

"A copy of this judgment showing payment shall be recorded in the office of the county clerk of the county in which the property is situate, and thereupon the title or interest in the property affected shall vest in the petitioner."

We do not propose to separately analyze each section, provision or word in this act. We think that the legislative intent is so clear that there can be little room for argument.

By its title, the act is one providing an alternative procedure whereby public or private property may be condemned for highway purposes.

In Section 1 is an expression of the legislative intent to establish a special procedure more speedily to accomplish the purposes as set forth in Section 3, which is the acquisition by the state for highway purposes of public or privately owned lands "by gift, agreement, purchase, exchange, condemnation or otherwise." The Commission would attribute to the legislature, by use of the words "or otherwise" some indication of intention that payment of compensation was not required when public property is condemned. We do not agree that any such thought is thereby expressed or implied. This is made doubly clear because private as well as public property may be acquired by all the methods stated, and unquestionably private property cannot be condemned without payment of compensation. Art. II, § 20, N.M.Const.

Provision is made in the same section that there shall be a determination of "the greater public need" when *state owned* property is being taken. We call attention to the use of the term "state owned" property rather than "public" property at this point. Also, in this connection, we would point to Section 4, subd. A(7), quoted above, requiring the condemnation petition to include a statement that the requirement of Section 3 has been complied with. The balance of the provisions quoted treat the owners of public property no differently than the owners of private property in any respect, including specification of the proper measure of compensation "for

all property taken [or] injuriously affected" (Sec. 14, subd. A) and requirement for the entry of a final order of condemnation after payment in full has been made. (Sec. 15).

It would have been practically impossible for the legislature to have stated more clearly their intention that compensation should be paid, when public property was condemned for highway purposes. The requirement for payment is clearly without regard to the nature of uses being made and accordingly includes property being used for a governmental as well as a proprietary purpose.

If there was any question that § 55–10–5, N.M.S.A.1953, authorizing the commission to acquire "private or public property" by condemnation, contemplated payment therefor whether it was used for proprietary or governmental purposes, we are clear that all uncertainty was erased with the adoption of Chap. 324, N.M.S.L.1959.

We would add a word to the effect that any other conclusion might lead to most incongruous results. Whereas, property owned and used by political subdivisions of the state for governmental purposes is technically state property, under our system of government each subdivision is made responsible for providing the facilities required by the particular subdivision through taxes or bond issues payable by the property owners of the subdivision. If the state can take a strip from the court house lot or the hospital lot, it can also take the court house building and the hospital building. Many such buildings are financed by the county through the issuance of general obligation bonds repayable with the taxes levied against property in the county. If the state took the buildings and did not compensate the county, replacement would have to be made through new bond issues or by other means which might be available to the subdivision. The burden would be intolerable or, possibly, even prohibited by debt limitations pertinent to the subdivision. See Art. IX, §§ 10 to 13, inc., N.M.Const.; § 15–49–2, N.M.S.A.1953. Since the highways are state projects paid for by the public of the state at large, including in many instances contribution by the federal government, it is only just and proper that the legislature in its wisdom should provide for compensation when public property is taken for highway purposes as they have clearly done in Chap. 234, N.M.S.L.1959, and since this is an alternative procedure, must also have intended by § 55–10–5, N.M. S.A.1953.

Under this construction of the statutes, absurdity, hardship and injustice are avoided and the public interest and convenience are favored. These are the results to be sought. Cox v. City of Albuquerque, 53 N.M. 334, 207 P.2d 1017; Scott v. United States, 54 N.M. 34, 213 P.2d 216.

The commission argues that there is nothing stated in the title or the body of Chap. 234, N.M.S.L.1959, indicating an intention to grant rights to compensation where none previously existed, and calls particular attention to the fact that since certain special provisions applicable to public property (Secs. 3 and 4, subd. A(7)) were included, and since the legislation is "a special alternative procedure" and was not intended to create new rights, we should conclude that no compensation need be paid for public property used for governmental purposes when taken under this alternative procedure. We have set forth our reasons for concluding otherwise.

We have noted the cases of The School District of the Speers Borough School District v. Commonwealth of Pennsylvania, supra, and State by and through Road Comm. v. Salt Lake City Public Board of Education, 13 Utah 2d 56, 368 P.2d 468, both of which cases involved the same question here considered. Both in Pennsylvania and in Utah, under statutes not nearly as clear as ours, a legislative intention that payment should be made in the ·event of condemnation of public property used for governmental purposes was found. We know of no cases to the contrary.

For the reasons stated, the judgment appealed from is affirmed.

It is so ordered.

CARMODY and NOBLE, JJ., concur.