211 So.2d 146

**STATE of Alabama**

v.

**JEFFERSON COUNTY BOARD OF EDUCATION.**

**6 Div. 197, 197 A, B & C.**

Supreme Court of Alabama.

April 4, 1968.

Rehearing Denied June 20, 1968.

MacDonald Gallion, Atty. Gen., Harvey Elrod, Montgomery, and Jos. S. Mead, Birmingham, for appellant.

Maurice F. Bishop, Frank Bainbridge and J. Kirkman Jackson, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

This is a condemnation proceeding instituted by the State of Alabama to acquire certain school lands owned by the Jefferson County Board of Education for the purpose of building a public highway.

On November 20, 1962, the State of Alabama (State) filed a verified application in the Probate Court of Jefferson County, Alabama, against the Jefferson County Board of Education (Board) to condemn for use as a public highway 18.36 acres or 43.27% of the 42.43 acre campus of Shades Valley High School. The campus was, and for years past had been, subject and devoted to public use as public school property, was owned by the Board, and located approximately 4 miles from the Jefferson County Courthouse.

The Board acquired this school property by purchases made in 1947 and 1952. The substantial school buildings and facilities situated on the campus site were constructed at a cost of over $2,500,000 from proceeds of School Board warrants secured by a special local 5-mill ad valorem tax voted by citizens of the area served by the school.

The verified application for condemnation, filed under Chapter 1, Title 19, Code of Alabama 1940 (Recompiled in 1958), averred that the property involved was owned by the Board. It was also averred that the property was "presently devoted to use by the public as part of an educational facility" and that the use of the property "for highway purposes will not materially interfere with the use of the property by the respondent." The application was granted and commissioners were appointed by the Probate Court. After hearings, under Sec. 13, Title 19, Code, they filed their report in writing under Sec. 16, Title 19, Code, and fixed the just compensation to be awarded at the sum of $600,000, on the basis of which an order of condemnation was entered in the Probate Court. Both the State and the Board filed timely notices of appeal to the Circuit Court of Jefferson County under Sec.

17, Title 19, Code, and each demanded a jury trial as to the valuation issue. The State immediately took possession of the property and commenced construction of the highway.

The Board, relying upon Sec. 9 of Title 19, Code, contended in the Probate and Circuit Court that the 18.36 acres were already devoted and subject to a public use; that there was no actual necessity for the taking, and that use of the 18.36 acres for highway purposes would render it impossible for these 18.36 acres to be used in the future for school purposes, and that the State had no right to condemn any portion of the school property. The Probate and Circuit Courts each held that the State had the right to condemn the 18.36 acres and that it must pay to the Board compensation for the land taken and for damages to the remainder. The Circuit Court held that the 18.36 acres already was devoted to a public purpose but there was an actual necessity for the taking for highway purposes and the taking of the 18.36 acres "will not materially interfere with the public use to which the remainder of said land or property is already subjected or devoted."

The jury trial, on the valuation issue, extended over a period of four weeks. The record of that trial covers over 2700 transcript pages and resulted in a verdict of $485,000 on the basis of which the final order of condemnation was entered in the Circuit Court. The State filed a motion for new trial which was overruled, and the State appealed. It filed three other separate appeals to this Court, and the Board took a conditional cross-appeal, presenting for review the issue of whether the State had the right to condemn the 18.36 acres.

The State has taken four separate appeals in this case. The main appeal, 6 Div. 197, presents the question of whether or not the State has to pay compensation to the School Board for property owned by the Board and already being used for a public purpose; 6 Div. 197–A concerns the taxation of costs in the case; 6 Div. 197–B

concerns the taxation of costs and apportionment of interest earned, said interest being peculiar to this case and explained later herein; 6 Div. 197–C concerns only the apportionment of interest earned.

Each appeal taken by the State other than 6 Div. 197 presents a single issue for determination by this Court, with only one assignment of error in each case.

We can perceive of no reason why these four appeals should not be dealt with and disposed of in a single opinion, and we will dispose of all matters presented for review by this Court in a single opinion.

The principal issue argued by the State under Assignment of Error No. 5 in 6 Div. 197, raised for the first time upon trial in the circuit court and after the State had taken possession of the 18.36 acres, is whether property already devoted to a public use and owned by a local board of education can be condemned or taken by the State Highway Department for highway purposes without payment of any compensation to the school board for the property so taken and damaged.

■ We are clear to the conclusion that the argument of the State that it may take the property owned by the Board of Education without compensation is without merit and contrary to the Constitution and statutes of Alabama and the prior decisions of this Court and other appellate courts. Sec. 23, 1901 Constitution of Alabama; Chapter 1, Title 19, supra; Sec. 71, Title 52, Code 1940 (Recompiled in 1958); Jefferson County v. City of Birmingham, 217 Ala. 268, 115 So. 422; Louisville & Nashville R. R. Co. v. Western Union Telegraph Co., 195 Ala. 124, 71 So. 118; State By and Through Road Commission v. Salt Lake City Public Board of Education, 13 Utah 2d 56, 368 P.2d 468; State ex rel. State Highway Commission v. Board of County Commissioners of Dona Ana County, 72 N.M. 86, 380 P.2d 830; Board of Education of Town of Morristown v. Palmer, 88 N.J.Super. 378, 212 A.2d 564; United States v. Board of Education of Mineral County,

4 Cir., 253 F.2d 760; State ex rel. State Highway Commission v. City of Albuquerque, 67 N.M. 383, 355 P.2d 925; School District of Borough of Speers v. Comm., 383 Pa. 206, 117 A.2d 702; State Highway Commission v. Greensboro City Board of Education, 265 N.C. 35, 143 S.E.2d 87; State v. Waco Independent School District, Tex.Civ.App., 364 S.W.2d 263.

The State does not argue or contend in this Court that the jury award was excessive. The cross assignments of error are urged only if the court should hold there is any reversible error in the record as to the valuation issue. The above authorities fully support the proposition that just compensation must be paid to the Board.

Section 23 of the 1901 Constitution of Alabama requires that "just compensation shall, in all cases, be first made to the owner." Section 235 of the Constitution provides:

"Municipal and other corporations and individuals invested with the privilege of *taking property* for public use, shall make just compensation, to be ascertained as may be provided by law, * * *" (Emphasis supplied.)

Chapter 1, Title 19, supra, governs and controls the right and power of "The State of Alabama" to condemn property, including "Property already devoted to public use," and provides that compensation shall be paid to the owner.

In Jefferson County v. City of Birmingham, 217 Ala. 268, 115 So. 422, a local act passed by the Legislature allowed Jefferson County to condemn part of a Birmingham City Park in order to build a new courthouse. This Court declared:

"* * * The Legislature determines the wisdom, expediency, or necessity of diverting the property from one public use to another, subject at all times to the condition that just compensation must be paid to the owner."

In the instant case, the State had statutory authority to condemn the property if

it met the requirements of Sec. 9 of Title 19, supra, but just compensation must 'be paid the school board.

In the recent and leading case of State By and Through Road Commission v. Salt Lake City Public Board of Education (1962), 13 Utah 2d 56, 368 P.2d 468, the Highway Department of Utah urged the same argument as that here pressed by the State. In that case, as here, the highway department filed a condemnation proceeding to take land of the school board for an interstate highway. It then moved for a summary judgment on the basis that it was not obligated to pay anything, specifically contending, as the State does here, that:

"Inasmuch as the property was merely being transferred from one public use and one public agency to another, it was not obligated to pay."

In rejecting this argument and holding that the State was required to pay just compensation, the Supreme Court of Utah declared:

"The gravamen of the plaintiff's argument is that it should not be supposed that the legislature would require that one public agency, under the necessity of taking the property of another, should compensate it because that would be the same as taking public money out of one pocket and putting into another. This argument may appear on the surface to have some merit, and it would in fact have some validity if the resources of the state could be regarded as one unified fund. But the argument is not sound, because that is not the fact. The fallacy is apparent when consideration is given to the means the legislature has created for the raising of the funds for the operation of the individual school districts in the state. It has provided a comprehensive and finely balanced plan for raising the funds for the various school districts and delegated responsibilities in connection with the raising and management of such funds to the various school boards. The tax funds so collected in the school districts are not covered into the general fund for the running of the state government at large, but are collected for the particular purpose of operating the public schools. If an individual state agency such as the Road Commission could reach over and take a property such as this Franklin School, worth several hundred thousand dollars, from a single school board, that would disrupt the balanced plan for the financing of schools. As a practical matter it would create insuperable obstacles for school boards in managing their schools. * * *

"The incongruity is even more apparent when it is realized that this project is not just a state highway but is part of a federal interstate system which is being constructed not only for Utah but for the whole United States. This principle is recognized by the federal government, which is participating in the cost of construction, including the acquisition of the right of way * * *. While the fact that the federal government is participating in the cost because the road is for the benefit of the entire nation has no bearing on determination of the legal issues involved, and would not be admissible in evidence, it does point up dramatically how incongruous and inequitable it would be to impose the entire cost of the right of way upon this individual school board."

The same argument here urged again was presented by a state highway department in State ex rel. State Highway Commission v. Board of County Commissioners of Dona Ana County, 72 N.M. 86, 380 P.2d 830, where the state sought to condemn property used in connection with the county courthouse and hospital. The Supreme Court of New Mexico specifically noted that:

"This appeal presents for determination the question of whether or not the State Highway Commission * * * must pay compensation to Dona Ana

County * * * for property of the county taken by the commission for highway purposes."

Obviously, the property involved in the *Dona Ana* case, supra, was used and maintained by the county "in its governmental function" and the court inquired:

"Having determined that the property being taken is property held and used in a governmental capacity, does it follow that it may be taken by another agency of the state without compensation?"

A unanimous court held that the state had to make just compensation and emphasized that:

"We would add a word to the effect that any other conclusion might lead to most incongruous results. Whereas, property owned and used by political subdivisions of the state for governmental purposes is technically state property, under our system of government each subdivision is made responsible for providing the facilities required by the particular subdivision through taxes or bond issues payable by the property owners of the subdivision. If the state can take a strip from the court house lot or the hospital lot, it can also take the court house building and the hospital building. Many such buildings are financed by the county through the issuance of general obligation bonds repayable with the taxes levied against property in the county. If the state took the buildings and did not compensate the county, replacement would have to be made through new bond issues or by other means which might be available to the subdivision. The burden would be intolerable or, possibly, even prohibited by debt limitations pertinent to the subdivision."

In the recent case of United States v. Board of Education of Mineral County (1958), 253 F.2d 760, the United States condemned a part of a West Virginia high school for a flood control project. The opinion for the United States Court of Appeals for the Fourth Circuit was written by Chief Judge Parker, who concluded that:

"Any reasonable man would say that where the government takes a part of the property necessary to the proper operation of a school, the government should make it possible for the school to acquire other property to use in substitution for the property taken."

We are clear to the conclusion that Assignment of Error No. 5 is without merit.

■ The State advances the same argument to all other assignments of error in 6 Div. 197 as they did in support of Assignment of Error No. 5 except as to those assignments of error based on written charges and oral instructions to the jury on the measure of damages. We will not consider these other assignments of error which deal with the giving or refusing of written charges and oral instructions pertaining only to the measure of damages because the State has not assigned as error and argued that the compensation awarded was excessive. State v. Dunlap, 279 Ala. 418, 186 So.2d 132; Southern Furniture Manufacturing Co. v. Mobile County, 276 Ala. 322, 161 So.2d 805; State v. Peinhardt, 270 Ala. 627, 120 So.2d 728.

Following the appeal from the Probate Court to the Circuit Court, the award entered in the Probate Court, in the amount of $600,000, was delivered to the Clerk of the Circuit Court by the Probate Judge. The Board filed a motion in the Circuit Court to invest the fund in government securities until the litigation was concluded so that it could earn interest during that period. The motion was granted and the funds were invested. Assignment of Error No. 2 in 6 Div. 197 and Assignment of Error No. 1 in 6 Div. 197–C assign as error the order of the Circuit Court apportioning the interest, earned and to be earned, on the amount of the probate award. The Court ordered

that the Board receive the interest on $485,-000 and the State the interest on $115,000. The State contends that it is entitled to all of the interest as the jury in rendering a verdict for just compensation awarded no interest.

 While we agree with the State that the trial judge cannot add interest to a condemnation award, State v. Jones, 271 Ala. 227, 123 So.2d 107, we do not agree that that is the case here. In the instant case, the interest to be apportioned is not interest on the jury award but interest on the Probate award which was invested. We can find no reason to overturn the trial judge's order apportioning the interest on the Probate award.

 The State has also filed a separate appeal from the order of the lower court taxing the costs against the State. This appeal is 6 Div. 197–A. The only error assigned is the overruling of the State's motion to retax the costs. The State contends that the only statute which clearly authorizes the taxation of costs against the condemner, Title 19, Sec. 30, Code, is intended to apply only where the condemner is required to put up security for costs. We see no reason why Sec. 30 should not apply to the State even if it does not have to put up security for costs and execution may not issue against the State. As no tender was made by the State as provided in Sec. 30, supra, the lower court was correct in taxing costs against the State.

Inasmuch as no briefs were filed in 6 Div. 197–B, it stands affirmed.

For the reasons set out in this opinion, we also affirm 6 Div. 197, 6 Div. 197–A and 6 Div. 197–C. Since we have affirmed the above cases, we will not consider the Board's conditional cross-appeal.

Affirmed.

SIMPSON, MERRILL and HARWOOD, JJ., concur.